JOYCE KANTARA MALTY, demandante y recurrida, *v.* LEONARDO CASTRO MONTAÑEZ, demandado y peticionario.

*Número:* CE-92-461          *Resuelto:* 28 de enero de 1994

*Ángel L. Montañez Torres,* abogado del peticionario; *José A. Figueroa Morales,* de *Figueroa Morales & Chaves-Caraballo,* abogado de la recurrida.

## SENTENCIA

Mediante una demanda presentada el 27 de enero de 1992 en el Tribunal Superior, Sala de San Juan, la Sra. Joyce Kantara Malty, quien estaba separada entonces de su esposo Leonardo Castro Montañez, le reclamó una pensión alimentaria al amparo del articulado del Código Civil referente a los alimentos entre parientes. Una (1) semana más tarde, ante el Tribunal de Distrito, Sala de Guaynabo, Castro Montañez presentó una demanda de divorcio por la causal de trato cruel contra Kantara Malty. Inmediatamente, Castro Montañez pidió que se trasladara el caso de alimentos a la Sala de Guaynabo y se consolidara con la acción de divorcio. El Tribunal Superior, Sala de San Juan, denegó dicho traslado. Mediante Resolución de 15 de mayo de 1992, sostuvimos dicha decisión al denegar el recurso CE-92-242 presentado ante nos por Castro Montañez.

Luego de varios incidentes procesales, la acción de divorcio se trasladó al Tribunal Superior, Sala de San Juan. Sin embargo, no se consolidó con la acción de alimentos entre parientes. Así las cosas, se celebró una vista en el caso de alimentos y se emitió una resolución imponiéndole

1

sanciones a Castro Montañez por incumplir con varias órdenes, se le anotó la rebeldía y se le ordenó pagar una pensión alimentaria de tres mil dólares ($3,000) mensuales a su esposa, retroactiva al mes de febrero de 1992.

Inconforme, Castro Montañez acudió ante nos mediante una moción en auxilio de jurisdicción y un *certiorari*. Le concedimos un término a la señora Kantara Malty para que mostrara causa por la cual no debíamos expedir el auto, consolidar las acciones y considerar la primera como una acción de alimentos *pendente lite*. En su comparecencia, ésta nos señala que no deben consolidarse, puesto que esas acciones no tienen elementos comunes de hecho y de derecho. Además, alega que los criterios para fijar una pensión de alimentos entre parientes son distintos a los de una pensión *pendente lite*. Su comparecencia no nos persuade; resolvemos según lo intimado.

La Regla 38.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, permite la consolidación de pleitos pendientes que encierran cuestiones comunes de hecho o de derecho. El caso de autos refleja esos denominadores comunes.

Primero, se trata de dos (2) casos entre las mismas partes que, por tener repercusiones en el aspecto económico del matrimonio, afectarán directamente a la sociedad legal de gananciales y su posterior liquidación. Segundo, mantenerlos separados conllevará más gastos y molestias a las partes. Procede su consolidación.

En cuanto a la pensión de tres mil dólares ($3,000) impuesta al peticionario Castro Montañez, de la resolución se desprende que éste no acudió a la vista, aunque estuvo representado por su abogado. También surge que el monto de la pensión se determinó "con vista a los autos y conforme los argumentos vertidos para récord el día de la vista celebrada". Del examen de la resolución recurrida y de los escritos presentados por las partes no aparece que el foro de instancia hubiese actuado con pasión, prejuicio o parcialidad al evaluar la prueba. Por lo tanto, debemos

conferirle deferencia a su determinación. No procede que variemos el monto de la pensión fijada. Claro está, ello no significa que el foro de instancia no esté facultado para evaluar cualquier pedido de reducción en el futuro.

*Se expide el auto y se ordena al foro de instancia a consolidar la acción de alimentos con el pleito de divorcio y considerar la primera como una solicitud de alimentos "pendente lite". Además, se devuelve el caso al foro de instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió una opinión concurrente, a la cual se unió el Juez Asociado Señor Rebollo López. La Juez Asociada Señora Naveira de Rodón emitió una opinión concurrente, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Fuster Berlingeri. El Juez Asociado Señor Alonso Alonso está conforme con la sentencia y hace constar que, por la naturaleza e importancia de los asuntos planteados en las ponencias de los miembros de este Foro, corresponde a la Asamblea Legislativa atenderlos.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

**– O –**

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Rebollo López.

Hace tiempo leímos en algún texto que hay dos (2) formas de errar al adjudicar un caso: razonar bien con hechos viciados o razonar mal con hechos verdaderos. Ambos equívocos son susceptibles de coexistir; en particular, si nos embarcamos en una extensa incursión de pronunciamientos *no planteados* en torno al régimen económico matrimo-

nial, que pertenecen más bien a una *lección* de derecho de familia.

## I

"El matrimonio, desde el momento que supone el *consortium omnis vitae* de dos personas para realizar el fin común específico, sin duda extrapatrimonial, pero de gran proyección material y pecuniaria, exige a su vez una regulación específica de los medios económicos que sirven a tal fin. Esta regulación versa, al menos, sobre lo que es inevitable en un matrimonio; el soporte económico del hogar. La vida en común del marido y mujer supone una serie de gastos; atenciones personales suyas y de los hijos (alimentación, educación, crianza, establecimiento); atenciones de personas frente a las cuales están obligados los cónyuges; actividades comunes que ocasionan dispendios que no deben ser soportados sólo por uno de aquéllos. Es preciso determinar, al menos, cómo ha de acudirse a estos gastos, y quién debe soportarlos (problema de la contribución a las cargas del matrimonio), determinación que constituye el elemento mínimo necesario de las relaciones conyugales y la raíz del régimen matrimonial." J.L. Lacruz y M. Albaladejo, *Derecho de familia: el matrimonio y su economía*, Barcelona, Ed. Bosch, 1963, pág. 235.

Aparte de estas consideraciones válidas, la experiencia indica que una relación matrimonial normal supone que el presupuesto familiar sea diseñado y gastado mediante la toma de decisiones armoniosas de ambos cónyuges, *coadministradores de la sociedad legal de gananciales*, o por resolución de uno sólo, con la anuencia expresa o implícita del otro.

Ahora bien, cuando el matrimonio fracasa es ineludible reconocer que el proceso de divorcio "produce alteraciones sustanciales en el equilibrio de las prestaciones matrimoniales. La trilogía estructural de los deberes-derechos personales que el matrimonio ha dinamizado —ello es, la cohabitación, la fidelidad y la asistencia— han de sufrir conmociones inevitables". E.A. Zannoni, *Divorcio y obligación alimentaria entre cónyuges*, 2da ed., Buenos

Aires, Ed. Astrea, 1977, pág. 28. De igual modo, como regla general, la crisis matrimonial impacta negativamente al proceso natural de decisiones compartidas y rompe el consenso conyugal en el orden económico.

Es ilusorio, pues, confiar en que, defraudados mutuamente, los cónyuges —allí donde existen las diferencias profundas, intolerancia, intransigencia e incluso hostilidad— puedan *ex propio vigore* dirimir por sí solos las desavenencias, en particular sus necesidades y gastos personales. *La coadministración y adopción de decisiones cordiales recíprocas cesan.* Sin acuerdos al efecto, la pensión alimentaria *pendente lite* —fundamentada o no teóricamente en la igualdad de uso y acceso de los bienes gananciales— por imperativo tiene que canalizarse a través de los tribunales.

## II

En el caso de autos, el Dr. Leonardo Castro Montañez tenía y mantuvo el control de los bienes de la sociedad, incluso los líquidos, debido a una (1) sola realidad *objetiva*: generaba los ingresos por su condición de profesional médico, subespecialista, bien remunerado. *Esta situación no fue creada por la Asamblea Legislativa ni por los tribunales. Nada tiene que ver con el sexismo o un esquema legal económico de subordinación de la mujer.* Tampoco con que su esposa, la Sra. Joyce Kantara Malty, recibiera una paga menor; es un dato no contradicho que ella no podía ni producía un trabajo profesional igual. *Sin apasionamiento, estos son los hechos.* Si fuera a la inversa —la esposa única profesional y/o mejor remunerada que el marido— ¿no sucedería lo mismo?

Si algo revelan los autos del caso es que el ilustrado tribunal de instancia (Hon. Ángel D. Ramírez Ramírez, Juez) atendió con prontitud diligente y eficazmente los pedidos de la señora Kantara Malty. Emitió varias órdenes

que obligaron al doctor Castro Montañez a entregarle lo que en esta etapa le corresponde en derecho. Que ella haya tenido que acudir al Tribunal —aún pasando por una situación dolorosa, crítica, llena de sentimientos de culpabilidad, pérdida de afectos y fracasada— difícilmente puede caracterizarse como "humillante". Repetimos, igual ocurriría a la inversa.

La señora Kantara Malty ha logrado reivindicar judicialmente sus derechos en todo momento. Incluso, ante la manifiesta temeridad e incumplimiento del doctor Castro Montañez, obtuvo una orden de arresto e ingreso —*que nos negamos a paralizar*— y promovió exitosamente varias medidas provisionales para asegurar el uso continuo de la pensión y los bienes que interesaba. Por razones que desconocemos, pudiendo, no solicitó la sindicatura.

## III

Cuando sobreviene la zozobra matrimonial, es totalmente erróneo y absurdo pretender que, durante el trámite de un divorcio, los cónyuges participen equitativamente de los bienes gananciales para cubrir sus necesidades de acuerdo con su posición social, y que ninguno tendrá, con respecto a lo así utilizado, un crédito contra el otro al momento de la liquidación de la sociedad de bienes gananciales. Esa tesis fluida es contraria al buen orden y funcionamiento de la misma sociedad ganancial y propicia el *libertinaje y dilapidación del caudal común*. En cualquier actividad generadora de gastos —la sociedad legal no es la excepción— hay que establecer unas necesidades, poner unos controles y fijar unas responsabilidades. Si los cónyuges voluntariamente no lo hacen, si hay serias desavenencias, si —en ocasiones— temporalmente uno o ambos están psicológicamente traumatizados, ¿cómo solucionar las discrepancias sobre "las necesidades de acuerdo a la posición social" sin la participación de los tribunales?

En esas instancias, la única forma de evitar un caos económico durante el trámite del divorcio es aplicar las normas legislativas y jurisprudenciales prevalecientes. En su proyección externa, los acreedores de la sociedad legal de gananciales poseen una expectativa de que el divorcio no signifique la bancarrota económica. Confían en la intervención judicial y la aplicación prudencial y racional de las normas para fijar alimentos, como medio de evitar la erosión del patrimonio ganancial. Permitir que los cónyuges utilicen libremente los fondos gananciales, sin control judicial, *es invitar al caos*. Tiene el potencial de suscitar una carrera desenfrenada y sin obstáculos, cuya meta será la máxima utilización por cada cónyuge de los fondos gananciales.

Hasta que la sociedad legal Castro-Kantara no se disuelva, la pensión alimentaria de ella debe ser contra el capital social. *Igual tratamiento ha de darse a los gastos en que incurra el doctor Castro Montañez para uso personal y otros conceptos.*([1])

Respecto al posible mal uso de fondos, no podemos olvidar que oportunamente el doctor Castro Montañez tendrá que rendir cuentas al liquidarse la sociedad legal. *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 91–92 (1981). Nada impide que la señora Kantara Malty, además de los remedios judiciales obtenidos hasta ahora, solicite otras medidas provisionales cautelares para evitar que sea "defraudad[a] por actos de ocultación o disposición de bienes". *Suárez Martínez v. Tribunal Superior*, 85 D.P.R. 544, 550 (1962).([2])

---

([1]) Tal resultado lo impone el Art. 1308 del Código Civil que, en lo pertinente, expone:

"Serán de cargo de la sociedad de gananciales:

"(5) El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges." 31 L.P.R.A. sec. 3661.

([2]) Es infundado presumir siempre que el cónyuge que está en posesión de los bienes gananciales se le permita impunemente hacer uso del patrimonio de ambos. El Art. 101 del Código Civil, 31 L.P.R.A. sec. 344, dispone que:

En resumen, en casos de profundas desavenencias en que la voluntad es terminar el matrimonio, y con ello la sociedad legal ganancial, si no hay acuerdos respecto al monto de la pensión alimentaria, la intervención a tiempo y su fijación por los tribunales sigue siendo el mejor y más justo remedio para salvaguardar los derechos de los cónyuges y sus acreedores.

— O —

Opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Fuster Berlingeri.

"Todavía la desigualdad persigue a la mujer. Aún queda por hacerle a la mujer verdadera justicia." Estas palabras de Don José Trías Monge siguen siendo tan válidas hoy como lo eran en 1983, cuando fueron publicadas en su artículo *Los Derechos de la Mujer*, 44 Rev. C. Abo. P.R. 43, 49 (1983).

A pesar de la reforma legislativa de la sociedad legal de gananciales aprobada en 1976, los hechos del presente caso demuestran que todavía la mujer se encuentra en una situación de subordinación propiciada por el mismo ordenamiento jurídico. Para propósitos de la concesión de alimentos antes del divorcio, la desventaja económica que sufre uno (1) de los esposos con respecto al cónyuge que tiene el control de los bienes gananciales perjudica, generalmente, a la mujer.

A fin de erradicar tal desigualdad y por imperativo de la Reforma de 1976, es necesario sentar las normas que de-

---

"Desde el día en que el procedimiento de disolución se inicie judicialmente, no' será válida ninguna deuda contraída ni transacción efectuada por cualquiera de los cónyuges sin la autorización del tribunal, a cargo de los bienes gananciales."

En virtud de la disposición transcrita, una vez entablada la acción de divorcio, las deudas contraídas por cualquiera de los cónyuges sin autorización judicial gravan sus respectivos haberes privativos.

berán regir los tribunales de instancia al fijar los alimentos entre los esposos cuando todavía está vigente el matrimonio.

## I

*Los hechos*

La Sra. Joyce Kantara Malty presentó una demanda ante el Tribunal Superior, Sala de San Juan, para reclamarle una pensión alimentaria a su esposo Leonardo Castro Montañez, de quien se había separado.[1] Días más tarde, Castro Montañez interpuso, a su vez, una acción de divorcio contra la demandante ante el Tribunal de Distrito, Sala de Guaynabo. Luego de resuelta la controversia surgida entre las partes sobre el foro competente para atender el caso de divorcio, éste se trasladó al Tribunal Superior, Sala de San Juan, aunque no se consolidó con la acción de alimentos entre parientes.

En una vista celebrada en el caso de alimentos, y debido a la repetida desobediencia del demandado a las órdenes del tribunal, se le anotó la rebeldía a Castro Montañez y se le impuso, a manera de sanción, una pensión alimentaria de tres mil dólares ($3,000) mensuales a favor de la señora Kantara Malty, retroactiva al mes de febrero de 1992. Además, se le concedió al demandado el término de treinta (30) días para depositar la suma de cinco mil dólares ($5,000) como abono a la deuda y se le ordenó satisfacerla a razón de quinientos dólares ($500) mensuales. También se le apercibió que el incumplimiento con dicha resolución se consideraría un desacato al tribunal y que "a petición de la parte promovente el Tribunal [podría] declararlo incurso en desacato y [ordenar] su arresto e ingreso sin más citarle".

---

[1] Por razón de la separación de su esposo, la señora Kantara Malty se mudó a otra vivienda situada en el municipio de San Juan. La residencia del matrimonio, lugar donde permaneció el señor Castro Montañez, queda ubicada en Guaynabo.

De esta resolución recurrió el demandado, planteando los errores siguientes:

PRIMER ERROR:

Erró el Tribunal Superior, Sala de San Juan (Hon. Ramírez Ramírez, A.) al denegar la desestimación de la acción de alimentos entre cónyuges, por falta de jurisdicción para entender en tal controversia en virtud de la radicación de la acción de divorcio y al denegar la consolidación de aquélla con ésta, conforme los términos del Art. 100 del Código Civil, 31 L.P.R.A. Sec. 343, que provee para la concesión de alimentos *pendente lite* en casos de divorcio.

SEGUNDO ERROR:

Erró el Tribunal Superior, Sala de San Juan (Hon. Ramírez Ramírez, A.) al fijar una pensión alimenticia al amparo del Art. 143 del Código Civil, 31 L.P.R.A. Sec. 562, en ausencia total de prueba que sustente tal determinación judicial.

TERCER ERROR:

Erró el Tribunal Superior, Sala de San Juan (Hon. Ramírez Ramírez, A.) al fijar una pensión alimenticia al amparo del Art. 143 del Código Civil, 31 L.P.R.A. Sec. 562, sin permitir que el perjudicado confrontara la prueba en su contra, en violación a las garantías mínimas del debido proceso de ley.

El mismo día en que presentó la petición de *certiorari*, el tribunal de instancia celebró una vista de desacato por incumplimiento con la resolución recurrida. El demandado no compareció a ésta. El foro de instancia determinó que éste se negaba a pagar los alimentos *pendente lite* fijados, no porque no pudiera, sino porque no deseaba hacerlo; y que, "conforme la evidencia en autos éste, siendo médico de profesión, especialista en cardiología y medicina interna, con sub-especialidad en gastroenterología tiene ingresos de $700,000.00".

Dos (2) días más tarde la orden fue diligenciada y el demandado arrestado. Éste compareció y depositó veintinueve mil trescientos seis dólares con veintinueve centavos

($29,306.29) y el foro de instancia dejó sin efecto la orden de arresto. El tribunal también denegó una moción de reconsideración de la resolución que fijó la pensión *pendente lite*.

Así las cosas, el 21 de agosto de 1992 se emitió, por este Tribunal, la resolución siguiente:

Vista la petición de certiorari, memorando y documentos anejos, se concede a la demandante recurrida Kantara Malty un término de diez (10) días para que comparezca por escrito a mostrar causa, si la hubiere, por la cual no deba expedirse el auto solicitado a los fines de ordenar la consolidación de la acción sobre alimentos con el pleito de divorcio en trámite, en virtud de considerar la primera como una de *pendente lite*. Además deberán ambas partes argumentar por qué la pensión actual de $3,000.00, bajo el enfoque antes expuesto, como única alternativa no deba entenderse imputable a la Sociedad Legal de Gananciales y en su oportunidad, como crédito, formar parte de la liquidación.[2]

Ambas partes han comparecido por escrito y nos corresponde resolver. Para ello es necesario analizar el articulado del Código Civil que trata sobre los alimentos entre los cónyuges a la luz de las disposiciones que rigen la sociedad legal de gananciales, los cambios en la administración de los bienes conyugales que trajo consigo la Reforma de 1976 y la intención legislativa de equiparar a la mujer respecto del hombre en las relaciones económicas del matrimonio. Por las razones que a continuación pasamos a exponer, concurrimos con la sentencia que hoy emite el Tribunal.

## II

*La reclamación de alimentos entre cónyuges*

Los cónyuges están obligados recíprocamente a darse alimentos, conforme al Art. 143 del Código Civil, 31

---

[2] Resolución de una Sala Especial de Verano.

L.P.R.A. sec. 562. Este deber no contiene excepciones, por lo cual su cumplimiento es exigible mientras subsista el matrimonio.

El ordenamiento jurídico permite que, vigente el matrimonio, se reclamen alimentos al cónyuge en cualquier momento. Esta reclamación es independiente del hecho de que los cónyuges vivan juntos o estén separados. La petición de alimentos puede solicitarse al tribunal en cualquiera de dos (2) etapas: antes de que se ejercite acción alguna en los tribunales o después de presentarse la demanda de divorcio. Si bien los Arts. 88, 89, 142 y 143 del Código Civil, 31 L.P.R.A. secs. 281, 282, 561 y 562, rigen en ambas etapas, el Art. 100 (31 L.P.R.A. sec. 343) contiene una disposición específica para la concesión de alimentos *pendente lite*, es decir, mientras dure el juicio del divorcio.[3]

Como regla general, la reclamación de alimentos entre cónyuges ocurre cuando todos o la mayoría de los bienes habidos en el matrimonio están bajo el control exclusivo de uno (1) de los cónyuges y el otro cónyuge carece de alimentos o no puede mantenerse según la posición social de la familia. El articulado del Código Civil que regula este tipo

---

[3] Art. 88 del Código Civil, 31 L.P.R.A. sec. 281:

"Los cónyuges están obligados a vivir juntos, guardarse fidelidad y socorrerse mutuamente."

Art. 89  del Código Civil, 31 L.P.R.A. sec. 282:

"Los cónyuges deben protegerse y satisfacer sus necesidades mutuamente en proporción a sus respectivas condiciones y medios de fortuna."

Art. 100  del Código Civil, 31 L.P.R.A. sec. 343:

"Si uno de los cónyuges no contase con suficientes recursos propios para vivir durante el juicio, el Tribunal Superior ordenará al otro cónyuge que le pase una pensión alimenticia en proporción a los bienes de éste."

Art. 142  del Código Civil, 31 L.P.R.A. sec. 561:

"Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia.

"Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad."

Art. 143  del Código Civil, 31 L.P.R.A. sec. 562:

"Están obligados recíprocamente a darse alimentos, en toda la extensión que señala la sección [precedente]:

"(1) Los cónyuges."

de reclamaciones dispone que, mientras esté vigente el matrimonio, los cónyuges satisfarán las necesidades mutuas de alimento conforme a los bienes de cada cual, disposiciones que requieren ser interpretadas en los casos en que se contrae matrimonio bajo el régimen de la sociedad legal de gananciales. Establece que "[l]os cónyuges deben protegerse y satisfacer sus necesidades mutuamente *en proporción a sus respectivas condiciones y medios de fortuna*". (Énfasis suplido.) Art. 89 del Código Civil, *supra*. Luego de interpuesta la demanda de divorcio, "[s]i uno de los cónyuges no contase con suficientes recursos propios para vivir durante el juicio el Tribunal Superior ordenará al otro cónyuge que le pase una pensión alimenticia *en proporción a los bienes de éste*". (Énfasis suplido.) Art. 100 del Código Civil, *supra*.

Un análisis del articulado del Código Civil que regula los alimentos entre parientes refleja la existencia de una anómala y anacrónica situación, cuando se trata de reclamaciones entre cónyuges que han contraído matrimonio bajo el régimen de la sociedad de gananciales, y es la sociedad legal la que cuenta con bienes de fortuna. Es entonces cuando el texto de los Arts. 89 y 100 del Código Civil, *supra*, aparenta ser inarmónico con el propósito que inspiró la Reforma de 1976 y con la propia naturaleza del régimen que, a falta de pacto entre los contrayentes, rige en Puerto Rico: la sociedad legal de gananciales. Más aún, está en abierta contradicción con lo dispuesto en·el Art. 1308 del Código Civil: "*Serán de cargo de la sociedad de gananciales el sostenimiento de la familia* y la educación de los hijos comunes y de cualquiera de los cónyuges." (Énfasis suplido.) 31 L.P.R.A. sec. 3661.([4])

_____

([4]) Esta situación anómala con respecto a las reclamaciones entre los cónyuges no surge cuando se trata de reclamaciones de alimentos entre cónyuges que otorgaron capitulaciones para regir sus bienes separadamente o aun cuando, habiendo contraído matrimonio bajo el principio de la gananciality, la sociedad legal de gananciales carece de bienes, mientras que uno o ambos cónyuges cuentan con bienes privativos.

Antes de adentrarnos en el análisis del problema señalado, veamos cuáles son las disposiciones pertinentes relacionadas con la sociedad de bienes gananciales. Excepto que los contrayentes hayan otorgado capitulaciones, la sociedad de gananciales da inicio el día de la celebración del matrimonio. No obstante, ello no impide que cada cónyuge tenga bienes propios.(⁵) Son bienes gananciales aquellos adquiridos por título oneroso durante el matrimonio a costa del caudal común, los obtenidos por la industria, sueldo o trabajo de los cónyuges, así como también los frutos, rentas o intereses percibidos o devengados durante el matrimonio procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges. Concluye la sociedad de gananciales cuando se disuelve el matrimonio por la muerte de uno (1) de los esposos, por divorcio o cuando es declarado nulo el matrimonio. Arts. 1296, 1299, 1301 y 1315 del Código Civil, 31 L.P.R.A. secs. 3622, 3631, 3641 y 3681.

La mayoría de los matrimonios en Puerto Rico, por razón de haber contraído nupcias sin otorgar capitulaciones, se rigen por el principio de la ganancialidad. Es frecuente, pues, que la sociedad sea la dueña de la totalidad o casi la totalidad de los bienes que poseen los cónyuges. Si la sociedad es la propietaria de los bienes, no puede entonces interpretarse que la pensión alimentaria que se le ordena que pase el cónyuge que tiene el control y la administración de facto de los bienes al cónyuge reclamante, provenga de los bienes particulares del cónyuge coadministrador demandado. Mientras subsista el matrimonio, los bienes

---

(⁵) El Art. 1299 del Código Civil, 31 L.P.R.A. sec. 3631, dispone:

"Son bienes propios de cada uno de los cónyuges:

"(1) Los que aporte el matrimonio como de su pertenencia.

"(2) Los que adquiera durante él, por título lucrativo, sea por donación, legado o herencia.

"(3) Los adquiridos por derecho de retracto o por permuta con otros bienes, pertenecientes a uno solo de los cónyuges.

"(4) Los comprados con dinero exclusivo de la mujer o del marido."

gananciales, tales como el sueldo y las rentas que se derivan de los bienes bajo el control de cualesquiera de los cónyuges, ya fueren estos gananciales o privativos, no se convierten en bienes privativos por el solo hecho de que se haya interpuesto una reclamación de alimentos, haya habido una separación o se haya presentado una acción de divorcio.

Ahora bien, no debe confundirse el trato que el ordenamiento jurídico da a las deudas contraídas después de iniciado el procedimiento de divorcio con el que da al uso por parte de los cónyuges de los bienes de la sociedad legal para cubrir sus necesidades personales. Durante el período que dure el trámite judicial, subsiste la obligación de satisfacer las necesidades de los cónyuges en proporción a las condiciones y medios de fortuna de la sociedad legal, esto independientemente de las deudas que uno u otro puedan contraer o transacción que puedan efectuar. Ahora bien, en cuanto a las deudas propiamente, éstas serán gananciales cuando se cumpla con el requisito adicional de obtener la autorización expresa del tribunal. Sin dicha autorización, la deuda será de aquel cónyuge que la contraiga. Art. 101 del Código Civil, 31 L.P.R.A. sec. 344. El propósito de este requisito adicional es evitar que el cónyuge que tiene el control de los bienes los dilapide o mal utilice en perjuicio del otro cónyuge.

Habiendo aclarado que el principio de la gananciabilidad impide que los bienes gananciales se conviertan en privativos por el hecho de que los cónyuges se hayan separado, pasemos ahora a hacer un breve análisis histórico de las disposiciones relacionadas con los alimentos entre cónyuges.

De acuerdo con los patrones sociales de principios de siglo, cuando la mujer ocupaba una posición de subordinación frente al hombre, nuestra propia jurisprudencia reflejaba una tendencia a considerar los bienes gananciales como si fuesen bienes particulares del cónyuge en control,

que usualmente era el hombre. *Girod v. Corte*, 43 D.P.R. 173 (1932).(⁶)

Cuando se aprobó el Código Civil de 1902, la segunda parte del Art. 89 se copió del Art. 120 del Código Civil de Luisiana: "El marido debe proteger a la mujer y satisfacer sus necesidades en proporción a su condición y medios de fortuna." 31 L.P.R.A. ant. sec. 282. Lo mismo ocurrió con nuestro Art. 100, *supra,* referente a alimentos *pendente lite*, el cual provino del Art. 148 de Luisiana. Ninguno de los dos (2) Artículos sufrió enmiendas en la versión de nuestro Código aprobada en 1930.(⁷) Tanto el Código Civil de Luisiana como el de España colocaban a la mujer casada en una posición de subordinación jurídica y económica con respecto a su esposo.

El Código Civil de Puerto Rico de 1902 adoptó varios artículos del Código Civil de Luisiana de 1870. Los Códigos

---

(⁶) En *Girod v. Corte*, 43 D.P.R. 173 (1932), la esposa reclamó una pensión alimentaria a su cónyuge, el Dr. Alejandro Buitrago, y alimentos provisionales en tanto se ventilaba el caso. La señora Girod alegó carecer de recursos para su subsistencia, que su marido abandonó el hogar sin causa y que él tenía recursos pecuniarios. El foro de instancia se negó a conceder los alimentos provisionales. Al anular este dictamen, explicamos que

"... uno de los deberes más fundamentales impuestos por la ley a los cónyuges consiste en el de socorrerse mutuamente en todos los casos en que este socorro sea necesario, *cualquiera que sea la situación legal del matrimonio,* ... por lo que el marido se encuentra en la ineludible obligación, mientras consienta semejante estado, de socorrer a su esposa en cumplimiento del deber natural." (Énfasis suplido.) *Girod v. Corte,* supra, pág. 175.

En 1932, cuando se resolvió *Girod v. Corte,* supra, el Art. 89 vigente establecía:

"El marido debe proteger a la mujer y satisfacer sus necesidades en proporción a su condición y medios de fortuna." 31 L.P.R.A. ant. sec. 282.

(⁷) El Art. 120 del Código Civil de Luisiana, vigente desde 1870 y derogado en 1985, disponía:

"The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition." La. C.C. Comp. Ed., 16 West's LSA-C.C., pág. 70 (1972).

El Art. 148 del Código Civil de Luisiana, vigente desde 1870 y derogado en 1990, disponía:

"If the wife has not a sufficient income for her maintenance during the suit for separation, the judge shall allow her a sum for her support, proportioned to the means of the husband.

"The husband can not be compelled to pay this allowance, unless the wife proves that she has constantly resided in the house appointed by the judge." La. C.C. Comp. Ed., 16 West's LSA-C.C., pág. 92 (1972).

Civiles tanto de Luisiana como de España tuvieron como modelo el Código Napoleónico de 1804. Según afirma el profesor Vázquez Bote, al legislador puertorriqueño que redactó el Código Civil de 1902 le pareció que ciertas disposiciones de Luisiana podían adoptarse aquí debido a que, por tener un origen francés en común, éstas tenían más semejanza con el derecho español que lo que tendrían las leyes de otros estados de la Unión, cuya procedencia era el *common law* de Inglaterra. Para aquel entonces las leyes españolas no reconocían el divorcio, por lo cual se prefirió tomar el ejemplo de Luisiana para reglamentar la disolución del matrimonio por razón de divorcio. E. Vázquez Bote, *Derecho Civil de Puerto Rico*, San Juan, Eds. Jurídicas, 1972, T. I, Vol. 1, pág. 132. Véase *Figueroa v. Municipio de San Juan*, 98 D.P.R. 534,566 (1970).

La estructura jurídica sobre la cual se asentó el derecho de familia en Puerto Rico durante los primeros tres cuartos de este siglo estuvo predicada "en la presunción de dependencia de la mujer respecto del hombre. Es decir, una visión estereotipada y tradicional que tiene razón de ser en la caracterización de la mujer como sexo débil donde el hombre tiene la obligación de protegerle y proveerle". S. Vilanova Hernández, *La pensión alimenticia post divorcio: ¿obligación o penalidad?*, 18 Rev. Jur. U.I.A. 349, 353 (1984).[8]

*El administrador único ·de la sociedad era considerado dueño y señor de los bienes gananciales*

No cabe duda que la anomalía de considerar los bienes gananciales como bienes propios del cónyuge que está en

---

[8] Esta misma filosofía y visión se refleja en el Art. 40(4) del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 254(4), que al disponer sobre personas bajo incapacidad establece lo siguiente:

"Si la persona con derecho a ejercer una acción, que no sea la reivindicatoria de propiedad inmueble, fuese al nacer la causa de acción:

"(4) una mujer casada siendo su esposo parte necesaria con ella para principiar la acción, el tiempo que dure tal incapacidad no se considerará parte del tiempo fijado para empezar a ejercitar la acción."

control de los mismos tiene sus raíces en la figura del marido como administrador de los bienes gananciales y jefe indiscutible de la unidad familiar. Hasta la Reforma de 1976 efectuada en la administración de los bienes gananciales, el marido era el jefe económico de la familia en Puerto Rico. Al tener casi la libre disposición de los bienes gananciales, los administraba como dueño y señor. La única restricción que, en aquel entonces, tenía era con respecto a enajenar o gravar los bienes inmuebles. Véase el Art. 1328 del derogado Código Civil de 1902 y el Art. 1313 del Código Civil de 1930 (31 L.P.R.A. sec. 3671), antes de ser enmendado por la Ley Núm. 51 de 21 de mayo de 1976 (31 L.P.R.A. secs. 284, 286, 3661, 3671, 3672 y 3717).

Durante gran parte del siglo XX, la situación de subordinación de la esposa, especialmente en el aspecto económico, dentro del matrimonio fue un denominador común en el ordenamiento jurídico de Puerto Rico, España y Luisiana. En Luisiana, el esposo era la cabeza del régimen matrimonial.

> The husband is the head and master of the partnership or community of gains; he administers its effects, disposes of the revenues which they produce, and may alienate them by an onerous title, without the consent and permission of his wife. Art. 2404 (derogado), La. C.C. Comp. Ed., 17 West's LSA-C.C., pág. 69 (1972).

Por su parte, en España, al igual que en Puerto Rico, el sistema de gananciales era el régimen ordinario de los matrimonios españoles. La doctrina española reconoció la inequidad existente entre los esposos.

> Durante el matrimonio hay desigualdad de derechos entre marido y mujer; el marido aparece como dueño de los bienes gananciales, y puede incluso disponer de ellos; la mujer, en principio, sólo con la aquiescencia del marido puede comprometer a los gananciales. Las sociedades ordinarias por regla general están reguladas sobre la base de la igualdad entre los socios. A.V. Colin y H. Capitant, *Curso Elemental de Derecho*

*Civil*, 3ra ed. rev. por J.M. Castán Vázquez, Madrid, Ed. Reus, 1955, T. VI, pág. 150.[9]

Mientras el marido ocupaba la posición de único administrador de los bienes gananciales, los derechos de la mujer en la sociedad legal de gananciales quedaban pospuestos hasta el momento de su disolución y liquidación. F. Sánchez Román, *Estudios de Derecho Civil*, Madrid, Sucesores de Rivadeneyra, 1912, T. 5, Vol. 1, pág. 844. Sánchez Román comenta la doctrina del Código Civil español que permitía al marido unos actos de libre disposición sobre los bienes gananciales para luego señalar como "excepcional" las facultades del marido para enajenar y obligar esos bienes sin el consentimiento de la otra copropietaria, hasta tanto no llegase el momento de la disolución del matrimonio, en que cada cónyuge haría suyos por mitad estos bienes. Íd., pág. 843. Estas facultades del marido fueron catalogadas como "omnímodas". Véase F.C. de Diego, *Dictámenes Jurídicos*, Barcelona, Ed. Bosch, 1958, T. III, pág. 405.[10]

En la medida en que se consideraba al marido como señor y dueño de los bienes del matrimonio, se le privaba a la mujer de intervenir en la administración de esos bienes. Es importante aclarar que en España, distinto a lo dispuesto en nuestro Código Civil desde 1902, no se requería que el marido obtuviese el consentimiento expreso de la esposa para enajenar los inmuebles gananciales.

No puede reputarse a la mujer como propietaria de la mitad

---

[9] El Art. 1298 del Código Civil, 31 L.P.R.A. sec. 3624, que equivale al Art. 1395 del Código Civil español, dispone que la sociedad de bienes gananciales se regirá por las reglas del contrato de sociedad en todo aquello en que no sea incompatible con dicha figura.

[10] "Véase cómo la relación y respecto de la mujer a los gananciales durante el matrimonio suena más a razón creditoria que a título dominical, aún en los mismos que entienden que se comunican *ipso facto* las ganancias entre consortes y adquieren propiedad sobre la mitad. Esta propiedad es quiescente, virtual, eventual, lo que equivale a desvirtuarla y transformarla en un derecho de crédito, y no otra cosa parece que quiere significarse calificando al dominio de la mujer en los gananciales durante el matrimonio de *in habito et credito*." (Énfasis en el original.) F.C. de Diego, *Dictámenes Jurídicos*, Barcelona, Ed. Bosch, 1958, T. III, pág. 408.

de los gananciales porque no se dan ninguna de las características de la comunidad ordinaria: ni la proporción en las cargas corresponde a las cuotas, ni el marido necesita el consentimiento de la mujer para hacer alteraciones en los bienes gananciales, ni para administrarlos ni para venderlos, ni se puede solicitar la intervención del juzgado en caso de que la administración fuera perjudicial; el marido puede libremente administrar los gananciales y aún disponer de ellos a título oneroso y en ciertos casos y para determinados fines aun a título lucrativo, y ninguno de los cónyuges puede disponer de su cuota ni salir de la comunidad. De Diego, *op. cit.*, pág. 403.

*El marido como único administrador de la sociedad de gananciales y su efecto en las reclamaciones de alimentos entre cónyuges*

Es en 1976 cuando en Puerto Rico se aprueba la Reforma en la sociedad legal de gananciales para hacer coadministradores a ambos cónyuges. Según previamente señalado, antes de la vigencia de la coadministración, la posición del marido como único administrador y representante legal de la sociedad impedía a la esposa intervenir en la casi absoluta libertad de disposición de los bienes conferida al esposo.

La visión del marido como propietario de los bienes matrimoniales se reflejaba en todos los aspectos de la relación familiar, incluyendo la concesión de pensiones alimentarias a la esposa durante el matrimonio. Al momento de asignar a la esposa la referida pensión "en proporción a los bienes de éste", refiriéndose al marido, los tribunales interpretaban que los bienes gananciales en control del marido eran los bienes de éste. Siendo el marido el proveedor, su sueldo u otros ingresos se consideraban, incorrectamente, bienes particulares suyos para propósitos de la pensión alimentaria que se le concedía a la mujer, aun cuando en realidad se trataba de bienes gananciales, o sea, bienes

pertenecientes a ambos cónyuges por partes iguales. *Echandi v. Parés*, 57 D.P.R. 171 (1940).[11]

Ahora bien, no empece la aprobación de la Reforma de 1976, todavía persisten en el ordenamiento jurídico ciertas disposiciones que son incompatibles con el propósito y espíritu que inspiró las enmiendas de 1976 al régimen de la sociedad legal de gananciales, a saber, la equiparación de la mujer respecto del hombre en las relaciones económicas del matrimonio. O. Cruz Jiménez de Nigaglioni y M. Hosta de Guzmán, *La nueva legislación que rige la sociedad legal de gananciales*, 37 Rev. C. Abo. P.R. 701, 705 (1976).[12]

A partir de 1976, no pueden continuar considerándose como propios del cónyuge en control del patrimonio matrimonial aquellos bienes que pertenecen a la sociedad de gananciales. De igual manera, es incompatible con el propósito de la mencionada Reforma interpretar que el cónyuge que no está en control de los bienes tiene que acudir al tribunal a *justificar* que se le conceda una pensión alimentaria en los casos donde existen bienes pertenecientes

---

[11] Un ejemplo de una decisión que consideró como particular del marido el sueldo que éste percibe, el cual es un bien ganancial, lo encontramos en *Echandi v. Parés*, 57 D.P.R. 171 (1940). Allí, el demandado Ramón Parés ganaba un sueldo de cuatrocientos dólares ($400) mensuales como administrador de la central Los Caños en Arecibo, y un estimado de cien dólares ($100) adicionales por concepto de otros ingresos que la Central le suministraba, tales como casa, agua, luz, teléfono, automóvil, chofer y gasolina. Mientras aún estaban casados, aunque viviendo separados, su esposa María Echandi le reclamó una pensión alimentaria ascendente a doscientos dólares ($200) mensuales. El demandado contestó argumentando que eran suficientes los cuarenta y cinco dólares ($45) concedídosle a ella anteriormente.

El tribunal de instancia concedió a la demandante Echandi la suma de cien dólares ($100) por concepto de la pensión. Al confirmar la sentencia, este Tribunal indicó lo siguiente:

"Normalmente uno no puede ver por qué un hombre que percibe $500 mensuales no deba pagar $100 al mes a su esposa. La prueba tiende a demostrar que en sus gastos personales nada más él invierte una suma mayor." *Echandi v. Parés*, supra, pág. 173.

Esta aseveración refleja que la concesión de pensiones alimentarias entre cónyuges estaba fundada en la premisa falsa de que los ingresos del marido le pertenecían a él y no a la sociedad de bienes gananciales, como lo disponía el Código Civil desde 1902.

[12] *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. 70,77 (1982); I. Picó Vidal, *Sentido y alcance de la reforma de la administración de los bienes gananciales: un comentario en torno a la trayectoria doctrinal del Tribunal Supremo de Puerto Rico*, 18 Rev. Jur. U.I.A. 241, 244 (1984).

a la sociedad de gananciales como, por ejemplo, sueldos y rentas, y, por otra parte, no exigirle al cónyuge que tiene el control de los bienes que justifique también sus propias necesidades o el uso que da a los bienes gananciales para cubrir esas necesidades personales. Cabe preguntarse: ¿por qué hace falta que uno (1) de los cónyuges obtenga permiso para hacer uso del patrimonio ganancial, mientras al otro se le otorga el derecho de impunemente hacer uso del patrimonio de ambos?

En síntesis, los tribunales están obligados a interpretar el articulado del Código Civil que rige las pensiones alimentarias entre los cónyuges de forma tal que se le insufle vida al propósito que animó la Reforma de la administración de los bienes gananciales aprobada en 1976. Esto exige una interpretación del articulado del Código Civil que propicie y permita la igualdad de acceso y de uso en lo que respecta a los bienes gananciales.

## III

*La coadministración de los bienes gananciales impide que sólo uno de los cónyuges tenga que justificar necesidad*

Como parte del conjunto de leyes aprobadas durante la Reforma de 1976, la Ley Núm. 51, *supra*, enmendó el Art. 91 del Código Civil, 31 L.P.R.A. sec. 284. Originalmente este artículo disponía que era el marido el administrador de los bienes de la sociedad conyugal, salvo estipulación en contrario.[13] La referida enmienda trajo un importante cambio: la coadministración.

---

[13] Antes de enmendarse, el Art. 91 del Código Civil de 1930 era una copia exacta del Art. 15a del Código de 1902. Véase 31 L.P.R.A. ant. sec. 284, vigente antes de la enmienda de 1976:

Ambos cónyuges serán los administradores de los bienes de la sociedad conyugal, salvo estipulación en contrario, en cuyo caso uno de los cónyuges otorgará mandato para que el otro actúe como administrador de la sociedad.

Las compras que con dichos bienes haga cualquiera de los cónyuges serán válidas cuando se refieran a cosas destinadas al uso de la familia o personales de acuerdo con la posición social y económica de ésta. Disponiéndose que cualquiera de los cónyuges podrá efectuar dichas compras en efectivo o a crédito.

Los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento escrito de ambos cónyuges. Nada de lo antes dispuesto se interpretará a los efectos de limitar la libertad de los futuros cónyuges de otorgar capitulaciones matrimoniales. Art. 91 del Código Civil, *supra.*

En dos (2) de los casos resueltos con posterioridad a la aprobación de la Ley Núm. 51, *supra,* expresamos que, a tenor con el desarrollo moderno hacia la igualdad en los derechos del hombre y de la mujer, "[h]a surgido un nuevo estado de legislación, tanto sustantiva como procesal, que erige la mujer a una posición de igualdad respecto al gobierno y disposición de los bienes gananciales y representación legal de su interés". *L. Dershowitz & Co., Inc. v. Registrador,* 105 D.P.R. 267, 271 (1976). Véase *Aguilú v. Sociedad de Gananciales,* 106 D.P.R. 652, 654 (1977).

A pesar de los cambios profundos, filosóficos y estructurales en el régimen administrativo de la sociedad de bienes gananciales que trajo consigo la Reforma de 1976, las enmiendas a los Arts. 89 y 100 del Código Civil, *supra,* refe-

---

"El marido será el administrador de los bienes de sociedad conyugal, salvo estipulación en contrario.

"Las compras que con dichos bienes haga la mujer serán válidas, cuando se refieran a cosas destinadas al uso de la familia, de acuerdo con la posición social de ésta.

"No obstante, los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento expreso de ambos cónyuges."

rentes a la responsabilidad de los cónyuges de alimentarse fueron sumamente sencillas. Se limitaron a incluir a la esposa, además del marido, como responsable de proveer alimentos. Donde antes el Art. 89, *supra*, decía "El marido debe proteger a la mujer y satisfacer sus necesidades en proporción a su condición y medios de fortuna", el artículo enmendado dispone: "Los cónyuges deben protegerse y satisfacer sus necesidades mutuamente en proporción a sus respectivas condiciones y medios de fortuna." 31 L.P.R.A. sec. 282.

Aun cuando ambos artículos quedaron finalmente redactados en un lenguaje no sexista, lo cual constituye un logro importante, el cambio fue más bien de tipo semántico. Las enmiendas realizadas a los Arts. 89 y 100, *supra*, no lograron armonizar la responsabilidad de los cónyuges de alimentarse mutuamente con aquellas disposiciones que rigen la sociedad legal de gananciales, por cuanto no reflejan un cuestionamiento de la premisa filosófica sobre la cual se fundamentaban ambos artículos.

La premisa original era que el hombre, por estar incorporado al mercado del trabajo, era el protector y proveedor. De otra parte, por estar dedicada a las tareas domésticas la esposa debía ser protegida y provista. Si el hombre era el único proveedor, y casi el propietario de los bienes gananciales por su posición como único administrador de la sociedad, esos bienes bajo su control exclusivo se consideraban, para prácticamente todos los propósitos, suyos. Por ende, era el marido, y no la sociedad legal, quien asumía la carga de sostener económicamente a la esposa. Esta premisa, ya anacrónica de por sí, desvirtúa y desarticula el propósito de la Reforma.

La Reforma de 1976 exige un nuevo enfoque, una nueva postura, para combatir esta patente inequidad en el área de los alimentos entre cónyuges y lograr la igualdad. Luego

de establecida la coadministración, los bienes gananciales no pueden continuar considerándose como particulares de uno (1) de los cónyuges. Vigente el matrimonio, ambos cónyuges tienen igual derecho, tanto de administración como de acceso, a los bienes gananciales. Estos bienes le pertenecen a la sociedad y no al cónyuge que tiene el control de ellos. Los cónyuges, pues, satisfarán *sus necesidades* en proporción a las condiciones y a los medios de fortuna de la sociedad. Sólo en aquellos casos donde la sociedad carezca de bienes es que vendrán los cónyuges obligados a dar alimentos en proporción a sus respectivos patrimonios privativos, si los tuviesen.

Para evitar que nuestra interpretación de los Arts. 89 y 100, *supra*, por imperativo de la Reforma de 1976 vaya a generar una confusión entre la clase jurídica del país, habremos de enmarcar la concesión de alimentos dentro de la figura de la coadministración.

Al aprobar que ambos cónyuges serían los administradores de la sociedad de gananciales, la Asamblea Legislativa no creyó necesario definir el concepto de la coadministración. Aunque se le reconoce a ambos esposos el derecho de administrar conjuntamente el caudal conyugal, se le permite a cada pareja manejar sus recursos económicos de la manera que mejor convenga a ambos.[14]

Idealmente, las decisiones económicas que tome la pareja deberán ser por acuerdo mutuo. Reconocemos que éste no es siempre el caso y que uno (1) de los cónyuges puede

---

[14] Dentro del régimen de la sociedad legal de gananciales, las posibilidades para ejercitar la coadministración son amplias y su funcionamiento dependerá de lo que acuerde cada pareja. Por ejemplo, una pareja puede convenir en que ambos junten los ingresos en un solo fondo común y, luego de pagadas las deudas y gastos del hogar, el sobrante se ahorre o se utilice en proyectos que beneficien a los miembros de la familia (mejoras para el hogar, estudios, vacaciones, etc.). Otra pareja puede decidir que se distribuirán los pagos en proporción a los sueldos que perciban por sus respectivos empleos (*e.g.*, qué cónyuge le corresponde pagar qué deudas), aunque cada cónyuge podrá disponer del sobrante individual a su arbitrio. Ambos esposos pueden coadministrar el patrimonio ganancial aun cuando uno de los cónyuges genere los ingresos de la sociedad. Una pareja puede variar sus acuerdos sobre el funcionamiento de la coadministración todas las veces que estime necesario a lo largo de la convivencia conyugal.

tomar iniciativas que comprometan los bienes gananciales y obliguen a la sociedad legal sin consultar previamente al otro esposo.([15]) Véanse: *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. 70, 74 (1982); *Quintana Tirado v. Longoria*, 112 D.P.R. 276 (1982). Estas situaciones, aunque debieran evitarse, pueden ser solucionadas dentro del seno del hogar a través del diálogo entre los esposos. No obstante, cuando uno (1) de los cónyuges se sienta insatisfecho con la forma en que el otro esté administrando la sociedad de gananciales, ella o él puede acudir a los tribunales para solicitar el remedio adecuado mediante una acción civil. De igual forma, el cónyuge insatisfecho que no tiene el control de los bienes conyugales puede solicitar al tribunal que le ordene al cónyuge que tiene el control de los bienes que éste reconozca al reclamante *como coadministrador con los mismos derechos y prerrogativas.*([16]) Este reclamo judicial podrá hacerse en todas las etapas del matrimonio: cuando los cónyuges vivan juntos, durante la separación o se haya presentado la demanda de divorcio.

Si bien el Código Civil dispone que los cónyuges serán administradores de los bienes gananciales, no los obliga a ejercer la coadministración. Por otra parte, para que uno (1) de ellos ejerza como administrador único requiere el mandato expreso del otro. *WRC Props., Inc. v. Santana*, 116 D.P.R. 127, 136 (1985).

---

([15]) El Art. 1313 del Código Civil, 31 L.P.R.A. sec. 3671, es la contraparte del Art. 91, *supra*, que trata sobre la coadministración. Exige el consentimiento escrito del otro cónyuge para donar, enajenar y obligar a título oneroso los bienes muebles e inmuebles de la sociedad de gananciales, con la excepción de aquellas cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges. Aunque también exime del consentimiento al cónyuge comerciante o que ejerce una profesión, especifica que éste será responsable por los daños y perjuicios que dichos actos ocasionen a la sociedad legal.

El Art. 1313, *supra*, también establece que todo acto de disposición o administración sobre los bienes gananciales sin el consentimiento escrito del otro cónyuge no perjudicará a aquel que no consintió.

([16]) El Art. 91 del Código Civil, *supra*, dispone que ambos cónyuges serán administradores de la sociedad legal. Por ello, la acción judicial no es técnicamente para que se solicite la coadministración que la propia ley le reconoce al cónyuge reclamante, sino para obligar al otro cónyuge que actúa como administrador de facto que se la reconozca en la práctica.

Aun cuando uno (1) de los cónyuges no tenga el mandato expreso del otro esposo para desempeñarse como único administrador, puede que en la práctica esté actuando como administrador de facto, tal como lo denominamos antes. El cónyuge que no ejerce su derecho a la coadministración puede ser que lo haga voluntariamente o porque el administrador de facto le impide coadministrar. Mientras el cónyuge que no ejerce la coadministración permanezca sin acudir al tribunal a reclamar que el otro cónyuge le reconozca su derecho a la coadministración, se le imputará frente a los acreedores que ha consentido a las transacciones económicas efectuadas por el administrador de facto. En ausencia de reclamo judicial, las actuaciones del cónyuge que administra se presumirán válidas frente a terceros; sin embargo, quedará viva la reclamación interna entre los cónyuges hasta el momento de la liquidación de la sociedad.([17]) El rendimiento de cuentas por los actos, disposición o administración que le podrá exigir el cónyuge reclamante al esposo o esposa que administra de facto será prospectivo a partir de la reclamación judicial. La acción sobre rendimiento de cuentas tiene un término prescriptivo de quince (15) años. *García López v. Méndez García*, 102 D.P.R. 383, 395 (1974).

Ya mencionamos que el reclamo judicial puede hacerse en cualquier etapa mientras esté vigente el matrimonio. Una vez disuelto el vínculo matrimonial, concluye o se extingue la sociedad de gananciales. Art. 1315 del Código Civil, 31 L.P.R.A. sec. 3631. Es entonces cuando los ex cónyuges dejan de ser coadministradores para convertirse en

---

([17]) A partir de la Reforma de 1976 ambos cónyuges, con ciertas excepciones, tienen que consentir por escrito para adquirir bienes gananciales como para enajenarlos, aunque si uno (1) de ellos no consintió el acto de administración no es nulo sino anulable. *Trabal Morales v. Ruiz Rodríguez*, 125 D.P.R. 340 (1990). La sociedad de gananciales, una vez controvertida la presunción de ganancialidad, responde subsidiariamente por los actos de administración que realice un cónyuge sin el consentimiento del otro, y en la liquidación de los bienes se le concederá un crédito a favor del cónyuge que no consintió. *WRC Props., Inc. v. Santana*, 116 D.P.R. 127, 135 (1985).

comuneros hasta que se liquide la sociedad.([18]) Disuelta la sociedad y hasta su eventual liquidación, los bienes de la pareja serán regidos por las normas de la comunidad de bienes. *García López v. Méndez García*, supra, pág. 395; *Calvo Mangas v. Aragonés Jiménez*, 115 D.P.R. 219, 228 (1984). En calidad de comuneros, podrán contratar entre ambos o disponer especialmente el modo en que se administrarán los bienes comunes o, a falta de pacto, se regirán por las disposiciones generales que le aplican a la comunidad de bienes del Código Civil, Art. 326 y ss., 31 L.P.R.A. sec. 1271 y ss. Si uno (1) de los comuneros le niega a su ex cónyuge el derecho a participar en la administración de la comunidad, el perjudicado podrá acudir al tribunal de instancia para presentar su reclamo y éste proveerá lo que corresponda, incluso nombrar un administrador. Art. 332 del Código Civil, 31 L.P.R.A. sec. 1277.

Pasemos ahora a explicar el alcance que tendrá la acción civil interpuesta por el cónyuge reclamante. Anteriormente expresamos que ambos cónyuges tienen igual derecho, tanto de administración como de acceso, a los bienes gananciales. Cualquiera de los cónyuges puede interponer la acción civil para que se le reconozca su derecho a ejercitar la coadministración y el acceso a los bienes de la sociedad legal. Según puede presentar su reclamación para ejercitar la coadministración de todos los bienes gananciales, también puede reclamar que se le reconozca la coadministración de una parte específica del caudal conyugal.

No obstante, si lo que interesa el cónyuge reclamante es tener *acceso* a un bien ganancial o a una suma líquida específica periódica que le permita alimentarse de acuerdo

---

([18]) El Código Civil contiene una figura muy poco utilizada que es la separación de bienes de los cónyuges. Art. 1327 y ss., 31 L.P.R.A. sec. 3711 y ss. Esta institución permite, por excepción, que ocurra la liquidación de la sociedad antes de que se disuelva el matrimonio. La separación de bienes tendrá lugar en los casos que especifica la ley y en virtud de providencia judicial. Según esta figura, una vez liquidada la sociedad pero vigente el matrimonio, los cónyuges tienen·el deber de sostenerse recíprocamente. Esta separación de bienes promulgada por el tribunal no perjudica los derechos adquiridos con anterioridad por los acreedores.

con la posición social de la familia, también podrá hacerlo mediante la referida acción civil sin tener que pedir el ejercicio de la coadministración. No será requisito que el cónyuge reclamante tenga que probar necesidad alguna para que se le conceda el ejercicio de la coadministración. Con ciertas excepciones, tampoco tendrá que probar su necesidad para tener el acceso a un bien ganancial o a una cantidad de dinero periódica en particular, siempre y cuando esta suma líquida no constituya más de la mitad que le corresponde de los ingresos líquidos de la sociedad. Aclaramos que la cantidad de dinero a concedérsele al reclamante puede ser más de la mitad o menos de la mitad de los ingresos dependiendo de las circunstancias específicas de la pareja. Por ejemplo, habrá que considerar si los ingresos se derivan del trabajo, industria o profesión de uno (1) de los cónyuges y si éste prueba que necesita más de la mitad de las entradas mensuales para generar tales ingresos. Otro ejemplo sería si los cónyuges estuvieran separados y uno (1) de ellos tiene la posesión de un bien inmueble de la sociedad y prueba que para su mantenimiento requiere más de la mitad de los ingresos, o si tiene la custodia de los hijos. Véase el Art. 1308 del Código Civil, *supra.*

El tribunal considerará la solicitud del cónyuge reclamante utilizando el criterio de la posición social y económica de la familia. Entre otros factores, habrá de analizar los ingresos y egresos de la familia; si éstos son fijos o fluctúan de mes a mes, y los bienes muebles e inmuebles que poseen. En caso de que debido a las deudas y los gastos de la sociedad legal resulte que no exista o casi no quede un balance mensual que permita concederle una suma líquida para los alimentos del cónyuge reclamante, el tribunal estudiará si esas deudas y gastos se deben a actos de disposición realizadas por el cónyuge demandado para su uso personal. Si tal fuere el caso, el juez tomará las providencias necesarias para evitar que uno (1) de los cónyuges siga empeñando el crédito y los bienes de la sociedad para su

beneficio personal y en detrimento del otro. El tribunal intervendrá, a solicitud de parte, para propiciar una distribución balanceada, evitando así que uno (1) de los cónyuges disfrute de una posición económica holgada a expensas de que el compañero a quien prometió amar y respetar viva en medio de estrecheces y penurias.

Al hacer la liquidación final de la sociedad de gananciales, el tribunal procederá a la formación del inventario, y luego de pagadas las deudas de la sociedad, determinará el balance líquido el cual dividirá en partes iguales entre los cónyuges. Art. 1322 del Código Civil, 31 L.P.R.A. sec. 3697; *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89 (1981). Para propósitos del inventario hay que colacionar las cantidades que, habiendo sido pagadas por la sociedad de gananciales, deban rebajarse del capital de uno u otro cónyuge. Art. 1317 del Código Civil, 31 L.P.R.A. sec. 3692. Al respecto, es importante señalar que el acceso a un bien ganancial o las sumas líquidas concedidas judicialmente a uno o a ambos cónyuges para sus alimentos antes del divorcio no constituirá un crédito ni una deuda, sino una parte que le correspondía de los dineros de la sociedad legal de gananciales y que se le autorizó judicialmente a utilizar o a coadministrar. Recordemos que el sostenimiento de la familia, conforme al Art. 1308(5), *supra*. Es una carga de la sociedad de gananciales por la cual ninguno de los cónyuges podrá reclamar un crédito.

Finalmente, con relación a la acción civil previamente mencionada, una vez el tribunal determine que ambos cónyuges son coadministradores y que el administrador de facto viene obligado a reconocerle el ejercicio de la coadministración al cónyuge reclamante, o que fije unas cantidades para ambos cónyuges, ello no impide que a estos cónyuges les apliquen las disposiciones contenidas en los Arts. 89 y 100 del Código Civil, *supra,* sobre la obligación de alimentarse recíprocamente en aquellos casos cuando la

sociedad legal de gananciales carezca de bienes y uno o ambos cónyuges cuenten con bienes privativos.

## Los alimentos pendente lite

El criterio para fijar el monto de una pensión entre cónyuges está establecido en el Art. 142 del Código Civil, *supra*:

> Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, *según la posición social de la familia*. (Énfasis suplido.)

Esta obligación es recíproca entre los cónyuges. Art. 143, *supra*. El criterio de la posición social de la familia en reclamaciones de alimentos entre cónyuges incluye la etapa *pendente lite*.[19] Art. 142 del Código Civil, *supra*. Este criterio de la posición social de la familia para conceder alimentos cambia cuando los cónyuges han obtenido el divorcio. Es entonces cuando se sustituye por el criterio de la necesidad del alimentista y los ingresos, rentas, sueldos o bienes que sean de la propiedad del ex cónyuge alimentante. Art. 109 (31 L.P.R.A. sec. 385); *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981).[20]

Ahora bien, el Art. 100 del Código Civil, *supra*, reglamenta el derecho a alimentos mientras esté pendiente el trámite judicial del divorcio. Mediante la Reforma de 1976 se enmendó este artículo a fin de conceder a ambos cónyuges el derecho a recibir alimentos *pendente lite*. Al incluir a ambos cónyuges, se intentó conceder al esposo los mismos derechos de alimentos que por tantos años le correspondieron únicamente a la esposa, o sea, se quiso equiparar al

---

[19] *Quaere* si el criterio de la posición social de la familia para proveer alimentos será el aplicable a aquellos matrimonios en que exista separación de bienes por razón de la otorgación previa de capitulaciones, o cuando la sociedad carezca de bienes y los cónyuges tengan bienes privativos.

[20] Una vez disuelto el matrimonio pero sin que se haya liquidado la sociedad de gananciales surge, con respecto a los bienes de ésta, una comunidad de bienes.

hombre y la mujer tanto en los derechos como en las obligaciones. Sin embargo, la mera eliminación del lenguaje sexista del Art. 100, *supra*, no logró insuflarle vida a este artículo en conformidad con el espíritu de igualdad de la Reforma. No logró una modificación de las viejas premisas ni consiguió desplazar el esquema filosófico de subordinación en la concesión de alimentos *pendente lite*. Este esquema estaba cimentado en la subordinación de uno (1) de los cónyuges (la esposa), el que no tenía el control de los bienes, respecto al otro (el marido). Esto llevaba consigo el que el cónyuge subordinado tuviese que justificar su necesidad de utilizar parte de los bienes de la sociedad de los cuales era copropietario para cubrir sus necesidades personales. Sin embargo, el cónyuge en control de los bienes podía utilizarlos para cubrir sus necesidades personales, libremente, sin necesidad de ofrecer justificación alguna.

No cabe la menor duda, que esta forma de conceder alimentos entre cónyuges coadministradores resulta en un proceso humillante para el cónyuge que no tiene el control de los gananciales, generalmente la esposa. La etapa cuando los cónyuges se han separado o han iniciado el proceso del divorcio es—como regla general—dolorosa y crítica. Es normal que ambos cónyuges se sientan agobiados por los sentimientos de culpabilidad, pérdida afectiva y fracaso que trae consigo el rompimiento de la pareja. Ahora bien, para el cónyuge desempleado, o con un empleo poco remunerado, que carece del control de los bienes matrimoniales, esta crisis emocional se agrava al resultar este período en uno de graves carencias, privaciones financieras y pérdida de posición social. A todo esto hay que añadirle la humillación de tener que acudir al tribunal para reclamar la utilización de su propio patrimonio, justificando sus reclamos, esto es, teniendo que explicar, por qué y para qué necesita los bienes que está pidiendo. Grave es la injusticia que se ha venido cometiendo con el más

débil y desvalido de los cónyuges. Irónicamente, de otra parte tenemos al cónyuge proveedor, el cónyuge en control de los bienes gananciales, a quien no se le exige que justifique sus gastos, los cuales también son sufragados con recursos gananciales. El cónyuge en control tiene, con respecto a satisfacer sus necesidades de acuerdo con la posición social de la familia, libre acceso y uso de los bienes gananciales bajo su administración de facto. Para estos propósitos se le permite gastar los bienes de la sociedad legal sin mayores consecuencias.

Con relación a los alimentos *pendente lite*, los que han comentado sobre esta figura jurídica están contestes en que generalmente es el hombre quien tiene el control del caudal ganancial y, por lo tanto, la mujer es quien queda en un estado de indefensión económica.

> Es usual que uno de ellos tiene el control del caudal ganancial, generalmente el varón .... Experiencias pasadas permiten percibir las malas prácticas del alimentante *pendente lite* de reducir unilateralmente los pagos periódicos en efectivo que acostumbraba entregar a su cónyuge previamente; *le cancelan las tarjetas de crédito: le privan de las vacaciones y los viajes a que estaban acostumbrados, le privan del medio de transportación y a veces de dinero para la compra*. Estas medidas y otras análogas la mayoría de las veces van encaminadas a colocar al cónyuge custodio [de los hijos del matrimonio] en estado de indefensión económica. Ello, a su vez, generalmente hace viable la disolución del matrimonio con mayor rapidez y en circunstancias menos ventajosas para el cónyuge más débil económicamente —lo que inevitablemente también afecta negativamente a los hijos. (Énfasis suplido.) S. Torres Peralta, *La Ley Especial de Sustento de Menores y el derecho a pensión alimenticia*, 49 (Núms. 3–4) Rev. C. Abo. P.R. 17, 49 (1988).

Hay que ser conscientes de la situación de inferioridad económica que como regla general aún padece la mujer en la sociedad moderna. Aunque vivimos en una época de grandes oportunidades para el desarrollo educativo y profesional de la mujer, no todas participan de esas ventajas. En nuestra comunidad todavía existe un considerable número de mujeres que se dedican exclusivamente a las ta-

reas del hogar. La mayor parte de ellas realizan las labores domésticas, cuidan los hijos y ayudan a sus esposos a escalar posiciones más altas y mejor remuneradas en la sociedad, mientras ellas permanecen en una posición económica de total subordinación y dependencia.

En los casos en que la mujer participa en el mercado de trabajo la situación económica no es, usualmente, mucho mejor. Las mujeres, como norma, reciben una paga menor que los hombres por igual trabajo. En 1989 en Estados Unidos se estimó que el ingreso de la mujer que trabaja fuera del hogar equivalía a sesenta centavos (60) de cada dólar que gana el hombre.[21] Aunque no contamos con los datos específicos, la situación en Puerto Rico debe ser igual o quizás un poco más desventajosa para la mujer. Esta desigualdad económica que sufre la mujer la hace especialmente vulnerable durante el proceso de separación y divorcio.

Mientras exista el vínculo matrimonial subsiste la sociedad de gananciales. Si ambos cónyuges son coadministradores, el Art. 100, *supra*, hay que interpretarlo de forma tal que refleje la igualdad de uso y acceso a los bienes gananciales mientras esté vigente la sociedad legal, o sea, hasta que el divorcio advenga final y firme.[22]

En la actualidad, el esquema de alimentos *pendente lite* parece estar funcionando bajo la interpretación tradicional de que a los cónyuges les aplica el Art. 146 del Código Civil, *supra*, el cual exige al alimentista probar su necesidad, y la concesión de alimentos será proporcionada a los recursos del alimentante.[23] Este esquema es incompatible con el régimen de la coadministración de la sociedad. Ambos cón-

---

[21] J. Coleman, *Legal Limbo: The Divorcing Family Between Physical Separation and Legal Separation: A Proposal to Reduce the Mischief, Expense, Waste and Acrimony of the Divorce Process*, 28 J. Fam. L. 659, 669 (1990).

[22] *Castrillo v. Palmer*, 102 D.P.R. 460 (1974).

[23] "La cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo." Art. 146 del Código Civil, 31 L.P.R.A. sec. 565.

yuges son condueños de la propiedad común. No se trata aquí del alimentante que provee la pensión de sus fondos particulares, como lo sería el hombre divorciado que provee alimentos a su ex esposa. No existen aquí patrimonios distintos, sino una sola sociedad legal que tiene bienes. Tampoco hay subordinación alguna, porque se trata de dos (2) socios con iguales derechos en los bienes comunes.

Teniendo bienes la sociedad, no existe entre los cónyuges un alimentante y un alimentista en el sentido tradicional, pues el sostenimiento de la familia es una carga de la sociedad que subsiste durante la vigencia del matrimonio. Art. 1308 del Código Civil, *supra*. Más bien hay dos (2) esposos que son socios, uno (1) de los cuales puede tener el control total o parcial de los bienes de la sociedad. El deber de la sociedad de gananciales de suplir las necesidades de los cónyuges no es la deuda a la que se refiere el Art. 101 del Código Civil, *supra*.

Efectuada una reclamación de alimentos entre los esposos, si el cónyuge que controla el patrimonio matrimonial vive de los bienes de la sociedad y los gasta (o los mal gasta) para cubrir sus necesidades personales sin venir obligado a justificar, entonces el otro cónyuge tiene igual derecho de alimentarse de los bienes de la sociedad también sin tener que justificar su necesidad. Para que haya verdadera igualdad, el requisito de justificar la necesidad hay que exigírselo a ambos cónyuges o no exigírselo a ninguno.[24]

A partir de la Reforma de 1976 no se sostiene una interpretación de ley que, al momento de conceder alimentos *pendente lite*, favorezca únicamente al cónyuge que tiene el

---

[24] Algunos comentaristas han sugerido que, durante el trámite del divorcio, los ingresos de ambos cónyuges se distribuyan por partes iguales. Coleman, *supra*. Esta solución, sin embargo, no siempre es la más sabia. Por ejemplo, repetimos que habrá situaciones en las que uno (1) de los cónyuges tenga que invertir más de lo que sería su mitad para poder producir los ingresos; o puede darse el caso de que uno (1) de ellos tenga la posesión de un bien inmueble de la sociedad y necesite una cantidad adicional para su preservación y mantenimiento.

control de los bienes.($^{25}$) Conforme a lo expresado en la Parte III-A, cualquiera de los cónyuges que sea partícipe en una sociedad de gananciales podrá entablar una acción civil en los tribunales para reclamar el ejercicio de la coad-ministración o el acceso a un bien ganancial particular o suma líquida que le permita alimentarse, o ambos. Esta reclamación judicial podrá presentarse una vez iniciados los trámites del divorcio así como en cualquier otra etapa mientras esté vigente el matrimonio. El cónyuge recla-mante no tendrá que probar necesidad inclusive durante el trámite del divorcio (*pendente lite*), excepto cuando reclame que se le conceda acceso a una suma líquida mensual que equivalga a más de la mitad del total de los ingresos men-suales o bienes líquidos de la sociedad.($^{26}$) Por otra parte, el

---

($^{25}$) Aún más, la cláusula constitucional de igual protección de las leyes impide que, al momento de conceder alimentos *pendente lite*, se favorezca al varón para que administre los bienes gananciales sólo por razón de su sexo. En *Reed v. Reed*, 404 U.S. 71 (1971), el Tribunal Supremo federal resolvió, por unanimidad, que una ley de Idaho violaba la cláusula de la igual protección de la Decimocuarta Enmienda por-que, entre candidatos de igual categoría, hacía mandatorio dar preferencia a los hombres sobre las mujeres para propósitos de administrar el caudal de un familiar fallecido.

Nuestra Constitución prohíbe el discrimen por razón de sexo y la desigual pro-tección de las leyes. Art. II, Secs. 1 y 7, Const. E.L.A., L.P.R.A., Tomo 1. En *Zachry International v. Tribunal Superior*, 104 D.P.R. 267, 282 (1975), declaramos inconsti-tucional una ley discriminatoria contra las mujeres obreras relacionada a las condi-ciones de trabajo durante horas de almuerzo. En ese caso cuestionamos seriamente la validez de "premisas subjetivas, erróneas, tradicionales y estereotipadas que ema-nan de una visión masculina que consciente o inconscientemente tiene su razón de ser en la caracterización de la mujer como sexo débil". Véase *Milán Rodríguez v. Muñoz*, supra, pág. 615.

($^{26}$) El hecho de que se reclame el acceso a una suma líquida que equivalga a la mitad o más de la mitad de los ingresos mensuales o bienes líquidos de la sociedad no significa que el tribunal automáticamente concederá tal reclamo si el cónyuge de-mandado se opone y presenta evidencia para sostener su oposición. El cónyuge de-mandado puede traer ante la consideración del tribunal aquella evidencia que en-tienda pertinente, aun aquella que prueba que es él o ella quien tiene necesidad de utilizar una suma mensual que excede la mitad de los ingresos mensuales o bienes líquidos de la sociedad. Bienes líquidos se refiere a todas aquellas cantidades dine-rarias de las que se puede disponer en el momento por tener la certeza de su monto; por ejemplo, pagos no recurrentes, dinero ahorrado en cuentas bancarias, etc. Cuando ambos cónyuges aleguen necesitar mensualmente una suma líquida que exceda aquella suma que constituya la mitad de los ingresos mensuales (*e.g.*, suel-dos, frutos, rentas, intereses, etc.) o bienes líquidos de la sociedad, el juez de instan-cia sopesará ambas peticiones y resolverá lo que proceda en derecho, tomando en consideración la importancia de la necesidad que reclama tener cada cual.

esquema provisto por el Art. 100, *supra*, será de aplicación en aquellos casos en los que la sociedad legal de gananciales carezca de bienes y uno (1) o ambos cónyuges tengan bienes privativos, o cuando los cónyuges hayan otorgado capitulaciones matrimoniales.

## IV

*Discusión de los errores*

Dentro del marco jurídico anteriormente expresado, consideraremos los errores planteados por el demandado recurrente.

En cuanto al segundo y tercer señalamiento de error, no le asiste la razón. Un examen de los autos revela que no hubo ausencia total de prueba como alega el recurrente. Por el contrario, la evidencia que obra en autos no contradicha por el demandado fue relativa a que tenía ingresos ascendentes a setecientos mil dólares ($700,000) anuales. La prueba ante el juzgador incluía otros datos para poder determinar la posición social y económica de la familia, tales como la urbanización de clase alta donde está ubicada la residencia del matrimonio y el tipo de automóviles de lujo que utilizaban ambos cónyuges. Más aún, la capacidad económica de la sociedad de gananciales quedó demostrada cuando el demandado pudo reunir en un solo día alrededor de treinta mil dólares ($30,000) en efectivo para poder salir en libertad después de su arresto por haber desacatado las órdenes del tribunal.

Tampoco encontramos que al señor Castro Montañez se le violara el debido procedimiento de ley. El recurrente tuvo repetidas oportunidades para presentar la evidencia pertinente, pero las desaprovechó; estuvo ausente de las vistas señaladas en el tribunal de instancia, las cuales hubo que posponer. Tampoco aprovechó la oportunidad de presentar evidencia en la toma de deposición que le requi-

rió la parte demandante, la cual no pudo realizarse por sus múltiples incomparecencias.

Con respecto al primer error, la parte recurrente reclama que el tribunal no tenía jurisdicción. No le asiste la razón. El Tribunal Superior, Sala de San Juan, como parte del Tribunal General de Justicia, tenía jurisdicción, autoridad y poder para entender en la acción de alimentos. Dicha sala también tenía competencia sobre el asunto, ya que la señora Kantara Malty es residente en el municipio de San Juan y la competencia era del Tribunal Superior, Sala de San Juan. Sin embargo, sí se equivocó el tribunal al denegar la consolidación de alimentos. Reglas 1 y 38.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

## V

*Conclusión*

En el caso ante nos, los cónyuges Joyce Kantara Malty y Leonardo Castro Montañez contrajeron nupcias bajo el régimen de la sociedad legal de gananciales por cuanto no otorgaron capitulaciones con anterioridad para tener separación de bienes. Así lo reconoció el demandado en una moción presentada ante el Tribunal Superior.([27])

La señora Kantara Malty interpuso una demanda para reclamarle alimentos a su esposo, de quien se había separado unos días antes. En su demanda, ella alegó que el demandado la había maltratado de hecho y de palabra, razón por la cual ella tuvo que abandonar el hogar conyugal. Solicitó alimentos y, bajo juramento, afirmó que no generaba ingresos por cuanto su esposo sólo le permitía trabajar en la oficina profesional de éste. El demandado

---

([27]) "Que siendo el matrimonio entre las partes uno contraído bajo el régimen de la Sociedad de Gananciales ...". Moción de traslado y otros extremos presentada por el demandado Castro Montañez ante el Tribunal Superior, Sala de San Juan, el 5 de febrero de 1992.

tenía el control de los bienes de la sociedad, incluyendo la residencia perteneciente al matrimonio.[28]

El matrimonio disfrutaba de una buena posición social y una situación económica holgada. No hubo hijos entre los cónyuges. La residencia del matrimonio está ubicada en una exclusiva urbanización de Guaynabo. Conforme a lo alegado por la demandante Kantara Malty, el demandado Castro Montañez, médico de profesión, generaba ingresos anuales de setecientos mil (700,000) dólares.

Los hechos de este caso son un ejemplo clásico de la situación de indefensión económica en que queda el cónyuge que no tiene el control de los bienes gananciales, especialmente los bienes líquidos. Esta situación se agrava aún más cuando el cónyuge que tiene el control de los bienes cesa de pagar las deudas gananciales provenientes de aquellos bienes que están en posesión del cónyuge reclamante. Art. 1308 del Código Civil, *supra*.

Al abandonar su hogar, aparte de los artículos de uso personal, la señora Kantara Malty sólo pudo llevar consigo un automóvil marca Mercedes Benz, modelo de 1988. Este vehículo, uno (1) de los pertenecientes a la sociedad, le estaba asignado para su uso personal. El automóvil está financiado mediante un contrato de arrendamiento financiero a través de la corporación Velco. A raíz de la separación, el demandado cesó de pagar las mensualidades del vehículo. Por ello, empleados de la firma Velco en varias ocasiones le requirieron a la señora Kantara Malty la entrega del vehículo por falta de pago. Fue necesario acudir al Tribunal Superior para que, a tenor con una moción urgente de la demandante, se emitiera una orden para obligar al demandado a poner al día las mensualidades adeudadas a la corporación Velco. Aunque la orden fue ex-

---

[28] La demandante alegó lo siguiente:

"El demandado es médico de profesión, especialista en cardiología y medicina interna, con sub-especialidad en gastroenterología, en la actualidad domina, disfruta y posee todos los bienes pertenecientes a la Sociedad Legal de Gananciales, incluyendo bienes muebles privativos de la demandante."

pedida el 12 de marzo de 1992, el demandado no cumplió con la misma. Mientras tanto, el doctor Castro Montañez ha disfrutado de sus ingresos, que son gananciales, y de las demás propiedades de la sociedad sin tener que rendir cuenta de cuánto gasta para su uso personal y por otros conceptos. La suma concedida judicialmente para los alimentos de la señora Kantara Malty no llega ni a una cuarta parte de los ingresos mensuales de la sociedad. Esta cantidad concedida judicialmente no se considerará como deuda para propósitos de la liquidación.

La utilización de los bienes gananciales para satisfacer las necesidades de los cónyuges según la posición social de la familia, vigente el matrimonio, aun después de presentada la demanda de divorcio, no es una deuda. En la medida en que ambos cónyuges durante la tramitación del divorcio participen equitativamente de los bienes gananciales para cubrir sus necesidades de acuerdo con su posición social, ninguno tendrá, con respecto a lo así utilizado, un crédito contra el otro al momento de la liquidación de la sociedad de bienes gananciales.

Por no haberse cuestionado por la demandante Kantara Malty la cuantía concedida en concepto de alimentos de tres mil dólares ($3,000) mensuales, no pasaremos juicio sobre su corrección.

Por las razones antes expuestas concurrimos con la sentencia emitida por el Tribunal, ya que procede la consolidación de la acción de alimentos con el pleito de divorcio y la consideración de la solicitud de alimentos.