ISABEL ANTONIA GARCÍA LÓPEZ, ETC., demandantes y recurrentes, *v.* JUAN, ALEJANDRO y MANUEL MÉNDEZ GARCÍA y OTROS, demandados y recurridos.

*Número:* R-68-151      *Resuelto:* 31 de mayo de 1974

384

*Angel Roberto Díaz* y *Antonio Ortiz Toro,* abogados de los recurrentes, excepto la recurrente María Isabel Méndez García; *Edelmiro Martínez Rivera* y *Edelmiro Martínez, Jr.,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Revisamos en este recurso la sentencia del tribunal de instancia que desestimó la demanda interpuesta por la recurrente Isabel Antonia García López para reivindicar bienes gananciales y para decretar la nulidad de actuaciones y de los procedimientos judiciales que trasladaron simuladamente esos bienes fuera del patrimonio de la sociedad de gananciales constituida por ella y su entonces esposo José Méndez García. Los recurrentes impugnan la sentencia del tribunal de instancia apuntando como errores que incidió el tribunal: 1) al concluir que no se probó el fraude alegado, 2) al concluir que es válida la transacción entre las partes efectuada el 22 de noviembre de 1943 y aclarada por resolución *nunc pro tunc* el 7 de julio de 1947, 3) al declarar válida y correcta la liquidación de la cuenta personal de José Méndez García en la mercantil Sobrinos de A. Méndez y Hermano, así como los procedimientos judiciales y adjudicaciones hechas a Juan Méndez García, uno de los recurridos, en los casos civiles Núms. 42-626 y 42-625 y las donaciones hechas bajo las escrituras Núms. 6 y 5 de 14 de abril de 1960, otorgadas ante el notario Edelmiro Martínez, hijo, 4) al declarar sin lugar las cinco causas de acción ejercitadas en la demanda.

Los errores primero, tercero y cuarto están íntimamente relacionados fundándose los recurrentes en los mismos argumentos. Los discutiremos conjuntamente.

I

El tribunal de instancia desestimó la demanda al entender que no había prueba de fraude o simulación. Se fundó en el principio de derecho de que el fraude no se presume,

exigiendo a los recurrentes un grado irrazonable de prueba que en esencia desvirtúa la justicia del caso.

■ La regla general de que el fraude no se presume sólo significa que aquel que lo afirma debe probarlo con certeza razonable en forma tal que satisfaga la conciencia del juzgador. *Cf. Carrasquillo* v. *Lippitt & Simonpietri, Inc.*, 98 D.P.R. 659, 662 (1970). No significa que el fraude haya que demostrarlo con prueba concluyente ni con certeza matemática, pues, como sabemos, esta prueba es rara vez posible.

■ En realidad, no vemos diferencia fundamental entre la no presunción de fraude y la regla general que exige preponderancia de evidencia para probar un hecho. La diferencia propiamente está en la naturaleza del hecho a probarse y no en las reglas en sí. La experiencia nos indica que hay hechos de fácil constatación mientras que hay otros más difíciles de probar. Pero siempre, en uno y otro caso, el hecho debe probarse con preponderancia de prueba y no a base de conjeturas o especulaciones.

■ La prueba de los recurrentes en el caso de autos demostró con razonable certeza la existencia de fraude. Un examen detenido de la misma nos convence que el tribunal de instancia incidió al desestimar la demanda.

Conviene identificar a las partes para una mejor comprensión de los hechos. Los recurrentes son Isabel Antonia García López y sus hijos José Víctor y María Isabel Méndez García. Estos dos originalmente entraron al pleito como demandados pero luego se unieron a la madre como demandantes en la acción principal. Los recurridos Juan, Alejandro y Manuel Méndez García son hermanos de José Méndez García, esposo que fue de la recurrente Isabel Antonia. También son recurridos y demandados en la acción principal los hijos de ambos Rosa María, Aurora Margarita y Joaquín Reymundo Méndez García conjuntamente con la Ferretería Méndez, Inc.

Aparece del récord que tan pronto la recurrente Isabel Antonia García López instó demanda de divorcio contra su esposo José Méndez García el 27 de junio de 1942, éste inició en connivencia con sus hermanos una serie de actos simulados que culminaron en el despojo de la participación de aquella en la sociedad de gananciales.

No se había contestado aún la demanda de divorcio cuando ya el 31 de julio José Méndez García y sus hermanos Alejandro y Manuel, acordaban la liquidación de su cuenta personal en la Sociedad Mercantil Sobrinos de A. Méndez y Hermano, S. en C., quedando José como un simple empleado con un salario de $150.00 al mes. La liquidación se elevó luego a documento público mediante la escritura Núm. 126 de 5 de octubre de 1942 ante el notario Eduardo F. H. Dottin. Surge de esta escritura que José carecía de fondos con que liquidar su deuda a la Sociedad por lo que abonó a ésta el capital aportado quedando a deber la cantidad de $98.22.

Esta alegada situación de penuria no le impidió, sin embargo, incorporar un mes después, el 30 de noviembre de 1942, junto a sus mencionados hermanos, la Ferretería Méndez, Inc. Las Cláusulas de Incorporación archivadas en el Departamento de Estado revelan que José suscribió y pagó 75 acciones por un valor de $7,500. Un mes más tarde se disolvió la Sociedad Mercantil y se transfirieron sus activos a Ferretería Méndez, Inc.

La liquidación de la cuenta personal de José no alteró sus poderes y responsabilidades en el negocio. José continuó ejerciendo funciones y facultades de un socio: "El era uno de los jefes y el que cogía empleados y veía lo que hacía falta y lo que compraba y tenía el mando más bien," declaró su propia hija María Isabel Méndez García. (5ta. pieza T.E. pág. 14.) Testimonio que merece tomarse en cuenta porque, según veremos, es contra su propio interés. Igualmente el testimonio de José Víctor Méndez, (4ta. pieza T.E. pág. 70).

José continuó, además, viviendo cómodamente en Miramar teniendo a su servicio un automóvil y chofer y varios empleados en el servicio doméstico. (4ta. pieza T.E. pág. 71.)

A la par con los anteriores actos surge del récord de este caso que el recurrido Juan Méndez García instó sendas acciones en cobro de dinero contra su hermano José. El 5 de febrero de 1943, antes de decretarse el divorcio, Juan presentó en la anterior Corte de Distrito de San Juan el caso civil Núm. 42-625 mediante el cual le reclamó a su hermano el cobro de $2,109.87 por concepto de mercancía vendida en cuenta corriente. En esa misma fecha también presentó demanda de cobro de dinero en el caso civil Núm. 42-626 reclamándole el pago de $1,345 remanente de un préstamo que alegadamente él le había hecho a José para la compra de tres solares en la Calle Castro Viñas de Santurce. Le reclamó, además, $244.85 por concepto de anticipos que hizo a terceras personas en beneficio de José.

Salta a la vista de inmediato que ambas deudas tenían el carácter de ganancial, sin embargo, se demandó a José en su carácter personal y no como administrador de la sociedad de gananciales; que José no contestó la demanda y, en consecuencia, se dictó sentencia en rebeldía y se ejecutó uno de los solares adquiridos en la Calle Castro Viñas. El hermano Juan adquirió en la subasta el solar por la cantidad de $1,100, sirviendo de fiador para el embargo el otro hermano Alejandro Méndez García.

Es muy significativo que los tres solares originalmente adquiridos en la Calle Castro Viñas se habían agrupado y dividido en dos; uno de ellos fue cedido a Juan seis días después de presentada la demanda de divorcio. En la escritura de traspaso, la Núm. 81 de 3 de julio de 1942 ante el notario Eduardo F. H. Dottin, las partes comparecientes hicieron constar que a pesar de que en la escritura de adquisición aparecía que dichos solares fueron adquiridos por José y su esposa, "la verdad es que la adquisición se hizo por Don José

Méndez García para él y su hermano, aquí comparecientes, Don Juan Méndez García en común pro indiviso y por partes iguales, habiendo aprontado, el Don Juan Méndez García, la mitad del precio de adquisición", que ascendió a $2,690. (Exh. 3 dmte.)

Se convino en la escritura Núm. 81 la cesión de uno de los solares a Juan por la mitad del precio de adquisición, $1,345, "cantidad que el dicho Don Juan Méndez entregó con anterioridad a este acto, para el pago de la mitad de los tres solares. . . ."

Sin embargo, en el mencionado pleito Núm. 42-626 se reclamó la cantidad de $2,690 alegándose que Juan se la había entregado a José para ser invertida en la compra de los solares. O sea, que por un lado en la escritura se dice que Juan aportó la mitad del precio, $1,345, cantidad que se pagó al traspasársele uno de los solares, y, en la demanda de cobro de dinero se reclamó el precio total de $2,690. Por otro lado, no es lógico ni convincente que habiendo aportado Juan todo el dinero para la adquisición de los solares apareciera, sin embargo, José adquiriéndolos para sí en la escritura de compraventa para luego dividirlos entre los dos.

Pero es que, además aparece del récord que a pesar de que impiadosamente Juan ejecutó esta propiedad de José, éste luego lo designa en su testamento albacea, relevándolo de prestar fianza, contador-partidor, tutor de sus hijos menores y usufructuario en el tercio de libre disposición. Todos estos cargos son de naturaleza fiduciaria y en el orden natural de las relaciones humanas no se le otorga confianza a aquellos que nos embargan y ejecutan propiedad valiosa por deudas relativamente modestas, a menos que haya una explicación razonable para ello. Esta explicación aparece del récord, así:

Años más tarde Juan donó la propiedad ejecutada a los hijos de José y entregó $8,000 en efectivo a cada uno de los cinco hijos cumpliendo así ". . . con un mandato, una promesa que le había hecho al hermano y que con eso su conciencia

quebada tranquila." Declaración del Dr. Joaquín Méndez, hijo de José Méndez García, y sobrino de Juan. (4ta. pieza T.E. pág. 73.) La donación se hizo por la escritura Núm. 6 de 14 de abril de 1960 otorgada ante el notario Edelmiro Martínez Rivera, hijo.

El propósito de esta transacción la describió José Víctor Méndez en la siguiente forma:

"R. Primero, nos reunimos todos los hermanos en casa de Rosa María Méndez, mi hermana. Entonces, acordamos que se iba a distribuir la herencia de nuestro padre, como donación, por tres motivos. El primero de ellos era para evadir de que un hijo, que fue reconocido por nuestro padre, se enterara que había herencia, porque hacía un número de años se le dejó de pasar a ella y si ella se enteraba que había herencia iba a reclamar también. [4ta. pieza T.E. pág. 35.]

R. *En segundo lugar, para que nuestra señora madre no se enterara de que lo que se estaba distribuyendo era la herencia de nuestro padre.* [Id. 36 Énfasis suplido.]

R. Para evitar, igualmente, el pago de impuestos al Gobierno de Puerto Rico. La cantidad en exceso que se podía pagar." (Id. 36.)

Los hijos de José Méndez García—José Víctor y Joaquín —sabían, pues, que la escritura de donación otorgada por su tío Juan Méndez García constituía un acto espurio con el único designio de traspasarles la herencia del padre burlando la participación ganancial de la madre en los bienes comprendidos en la misma. (4ta pieza T.E. pág. 39–40.)

El tío Juan también donó a Rosa María Méndez García, hija de José, otra propiedad ubicada en la Calle del Parque mediante la escritura Núm. 5 otorgada ante el mismo notario Edelmiro Martínez Rivera, hijo, en la misma fecha que se otorgó la escritura de donación de la propiedad ubicada en la Calle Castro Viñas. La propiedad de la Calle del Parque había sido objeto de un procedimiento Ejecutivo Hipotecario que se

inició después de presentada la demanda de divorcio. Dicha propiedad también fue subastada por el hermano Juan cuando estaba pendiente el divorcio.

Debemos aclarar que esta propiedad de la Calle del Parque se incluyó en la demanda original de este caso como una segunda causa de acción y fue declarada cosa juzgada por este Tribunal en *García López* v. *Méndez García*, 88 D.P.R. 363 (1963), razón por la cual ya no forma parte de este recurso. Señalamos, sin embargo, el hecho de que también fue objeto de donación porque ello refleja un patrón de conducta similar al que se siguió con respecto a la propiedad ubicada en la Calle Castro Viñas adquirida en subasta y luego donada a uno de los herederos. Patrón que razonablemente crea fuertes sospechas sobre el propósito real y verdadero del traspaso por donación.

■ Los anteriores hechos, unidos a la circunstancia sospechosa de que todas estas transacciones se celebraron entre parientes cercanos, son suficientes para levantar la inferencia de fraude y transferir el peso de rebatirla a los recurridos. *Nine* v. *Avilés*, 53 D.P.R. 494 (1938); *The Texas Co.* v. *Estrada y Alvarez, Int.*, 50 D.P.R. 743, 750 (1936). Estos no rebatieron dicha inferencia, descansando su caso en la prueba documental impugnada y en el testimonio de Manuel Méndez García. Dicho testimonio se limitó a las transacciones relacionadas con el inmueble ubicado en la Calle San Agustín de Puerta de Tierra y el cual consideraremos al abordar el segundo apuntamiento.

Incidió el tribunal de instancia al concluir que no se probó el fraude alegado y, en su consecuencia, al declarar válida la liquidación de la cuenta personal de José Méndez García en la Mercantil Sobrinos de A. Méndez y Hermano, así como los procedimientos judiciales y adjudicaciones hechas en los casos civiles Núms. 42-626 y 42-625 y las donaciones hechas bajo las escrituras Núms. 6 y 5 de 14 de abril de 1960, otorgadas ante el notario Edelmiro Martínez, hijo.

## II

Los recurridos sostienen que todas las reclamaciones de los recurrentes están prescritas por el transcurso de más de 16 años de haber ocurrido los hechos que se exponen en la demanda. Arguyen que habiéndose efectuado la liquidación de los gananciales el 22 de noviembre de 1943 el término de los recurrentes para impugnar la transacción por causa de error, dolo o por falsedad de causa, era de sólo 4 años que, es el término fijado en el Art. 1253 del Código Civil, 31 L.P.R.A. sec. 3512.

Efectivamente, la liquidación de la sociedad de gananciales se efectuó el 22 de noviembre de 1943 mediante una moción titulada Comparecencia de las Partes en Relación con la Liquidación de los Bienes Gananciales que en lo pertinente dispuso lo siguiente:

".              .         .        .       .     .       .          ."

3—Que la sociedad de gananciales existente entre las partes comparecientes ha sido debidamente liquidada y que como consecuencia de dicha liquidación la demandante-contra-demandada ha recibido a su satisfacción y contento de manos del demandado-contra-demandante la suma de $3,000 que es la participación justa y razonable que corresponde a dicha demandante-contra-demandada por el concepto de gananciales dicho."

A tenor con dicha estipulación el tribunal de instancia dictó una "Orden" liquidando la sociedad de gananciales. (1) Cuatro años después, el 3 de julio de 1947, a solicitud de los abogados de récord enmendó la llamada Orden mediante una resolución *nunc pro tunc* ampliando sustancialmente el alcance de la estipulación. La enmienda fue al efecto de que "cualesquiera bienes o inmuebles existentes a la fecha de la disolución del matrimonio pertenecerán única y exclusivamente al demandado-contra-demandante por haber éste satis-

---

(1) La llamada "Orden" constituye para todos los efectos legales una sentencia.

fecho a la demandante-contra-demandada la participación que a ésta correspondía en los bienes gananciales." La recurrente impugnó la estipulación acordada en el 1943 aduciendo que su consentimiento se obtuvo por engaño, dolo, falsedad y presión indebida.

■ Estamos de acuerdo con la recurrente que su consentimiento se obtuvo por dolo. Su planteamiento, no obstante, es tardío. La acción de nulidad por dolo prescribe a los cuatro años desde que se consumó el contrato. Art. 1253, Código Civil, 31 L.P.R.A. sec. 3512, *Rivera* v. *Sucn. Díaz Luzunaris*, 70 D.P.R. 181 (1949) y *Girod Lube* v. *Ortiz Rolón*, 94 D.P.R. 406 (1967). La demanda impugnando la transacción se interpuso cerca de 16 años después de consumada la transacción cuando el término prescriptivo para su ejercicio ya se había agotado.

Esto, sin embargo, no dispone completamente de las diversas causas de acción ejercitadas por la recurrente para anular los procedimientos judiciales y las actuaciones que hemos mencionado en el curso de esta opinión. Ello es así porque la transacción acordada en el 1943 cubrió solamente la propiedad ubicada en la Calle San Agustín Núm. 45 de Puerta de Tierra, que fue el único bien ganancial que las partes tuvieron en mente al acordar la estipulación.

■ La resolución *nunc pro tunc* es nula e inexistente porque se dictó sin jurisdicción, cuando ya la sentencia era final y firme. Como se sabe, las resoluciones *nunc pro tunc* sólo pueden corregir errores de forma, omisiones o inadvertencias pero no pueden alterar sustancialmente la sentencia cuando, como en el caso de autos, ésta es final y firme. Regla 49.1 de Procedimiento Civil, *Fernández* v. *Registrador*, 82 D.P.R. 539, 547 (1961); *Banco Popular* v. *Tribunal Superior*, 82 D.P.R. 242, 248 (1961). La renuncia general a favor de Juan Méndez García "sobre cualesquiera bienes muebles o inmuebles" adicionada por dicha resolución es, por lo tanto, inoperante.

Veamos ahora el alcance de la estipulación acordada en el 1943.

■ Sabemos que la intención de las partes es la que determina el alcance de las obligaciones contractuales y que la misma se juzga tomando en cuenta no sólo los actos coetáneos y posteriores al contrato sino también todas las demás circunstancias indicativas de la voluntad de las partes. Art. 1234, Código Civil, 31 L.P.R.A. sec. 3472, *Merle* v. *West Bend Co.*, 97 D.P.R. 403 (1969).

En el caso de autos las partes estipularon la liquidación de la sociedad de gananciales por la cantidad de $3,000 en noviembre de 1943 sobre la base de que el único bien existente en el patrimonio ganancial lo constituía un condominio de una tercera parte de la propiedad ubicada en la Calle San Agustín Núm. 45 de Puerta de Tierra, consistente en un solar de alrededor de 1,336 metros cuadrados y un edificio de cuatro plantas de cemento armado. Todos los demas bienes habían sido trasladados simuladamente por distintos medios a los hermanos de José Méndez García. Así, los inmuebles ubicados en la Calle Castro Viñas y en la Calle del Parque fueron subastados y adquiridos por Juan Méndez García y luego donados a los hijos de José; la cuenta personal de José en la Sociedad Mercantil Sobrinos de A. Méndez y Hermano, fue liquidada después de instada la demanda de divorcio y antes de disolverse el vínculo matrimonial, quedando José como deudor de la Sociedad Mercantil y, las acciones de José en la Ferretería Méndez, Inc., fueron adquiridas por otro hermano de nombre Ramón Méndez García. (Exh. 1 dda.)

Es evidente que las partes no podían tener en mente bienes que ya no "pertenecían" a la sociedad de gananciales, siendo la intención clara y definitiva de ellos al acordar la estipulación de transacción la de liquidar la participación de la recurrente en el único bien que en ese momento aparecía en el caudal ganancial, la ubicada en la Calle San Agustín. La

defensa de prescripción sólo puede oponerse a la causa de acción relativa a esta propiedad.

Los recurridos también oponen la defensa de prescripción a la impugnación de los procedimientos judiciales en los casos civiles Núms. 42-625 y 42-626, y, a la impugnación de la liquidación de la cuenta personal de José Méndez García en la Sociedad Mercantil Sobrinos de A. Méndez y Hermano. No tienen razón.

■ Se trata, como ya vimos, de actuaciones simuladas inexistentes, sin efecto jurídico alguno para los cuales no hay términos prescriptivos. *Hernández Usera* v. *Srio. de Hacienda,* 86 D.P.R. 13 (1962), *Hernández* v. *Ayala,* 68 D.P.R. 956 (1948).

■ Tampoco tiene mérito el argumento de que, asumiendo que fuera ineficaz en derecho la liquidación de los gananciales debido a dolo, la acción para forzar la liquidación también ha prescrito por el lapso de más de 15 años. La sociedad de gananciales concluyó tan pronto se disolvió el matrimonio entre las partes, Art. 1315 del Código Civil, 31 L.P.R.A. sec. 3681. Pero mientras está pendiente la liquidación de la sociedad lo que existe en derecho es una comunidad de bienes, que en ausencia de contrato o disposiciones especiales se rige por los Arts. 326 al 340 del Código Civil, 31 L.P.R.A. secs. 1271–1285. La acción para pedir la división de la cosa común nunca prescribe, por lo cual el transcurso del tiempo no puede derrotar la justicia del caso de la recurrente.

■ *Serrano* v. *Talavera,* 65 D.P.R. 438 (1945), citado por los recurridos en su alegato no es de aplicación pues se refiere a la acción sobre rendición de cuentas cuyo término prescriptivo es de 15 años. Art. 1864, Código Civil, 31 L.P.R.A. sec. 5294.

Repetimos, la defensa de prescripción sólo tiene eficacia con respecto a la causa de acción relativa a la propiedad ubicada en la Calle San Agustín, que como ya vimos, fue la única incluida en la estipulación de 1943.

En resumen, concluimos que el tribunal de instancia incidió al declarar sin lugar las causas de acción relativas a la liquidación de la cuenta personal de José Méndez García en la Sociedad Mercantil Sobrinos de A. Méndez y Hermano y las relativas a la nulidad de los procedimientos seguidos en los casos civiles Núms. 42-626 y 42-625. La causa de acción relativa a la propiedad ubicada en la Calle del Parque fue declarada cosa juzgada en *García López* v. *Méndez García,* supra. La causa de acción relacionada con la participación ganancial de Isabel Antonia García López en las acciones de la Ferretería Méndez, Inc., no fue sustanciada, apareciendo de la prueba documental que dichas acciones fueron vendidas por José Méndez García a Ramón Méndez García, quien no es parte en este litigio. (Exh. 1 dda.)

El tribunal de instancia, previa estipulación de las partes, dividió el caso en dos etapas; la primera para determinar si había fraude y en caso afirmativo, determinar entonces los daños. Como llegó a la conclusión errónea de que no había habido fraude, no celebró vistas para determinar los daños. Procede que devolvamos el caso para que se celebre dicha vista, limitada a lo aquí resuelto.

Se dictará sentencia *revocando la dictada por el tribunal de instancia y se devolverá el caso para ulteriores procedimientos consistentes con lo dispuesto anteriormente.*