# 2004 DTA 112

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGION JUDICIAL DE CAGUAS, PANEL IX

GREGORIO L. ACOSTA NAVARRO
Demandante-Apelado

v.

CARMEN I. CRUZ SANTOS
Demandada-Apelada

Núm. KLAN-03-01423

San Juan, Puerto Rico, a 25 de mayo de 2004

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Aponte Jiménez y Salas Soler

Pesante Martínez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte apelante, Carmen I. Cruz Santos, mediante el recurso de apelación de título procura la revocación de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, (en adelante, "*TPI*"), sobre liquidación de bienes.

Por los fundamentos que más adelante habremos de exponer, confirmamos la sentencia en controversia.

## II

Tal y como mencionáramos, el caso ante nos está vinculado a revisar el análisis efectuado por el TPI al momento de liquidar la comunidad de bienes habida entre las partes por casi veintitrés años. Como es natural en este tipo de casos, la sucesión de eventos posterior a la disolución del matrimonio va inexorablemente atada a las consideraciones que se deben tener en cuenta al momento de liquidar los bienes en la comunidad subsistente. Por ello, pasaremos a auscultar los hechos suscitados durante dicho período para facilitar el análisis de la controversia según planteada mediante el recurso instado ante nos.

El Sr. Gregorio Acosta Navarro y la Sra. Carmen I. Cruz Santos se casaron el 11 de agosto de 1964 bajo el régimen de sociedad legal de gananciales. El 9 de enero de 1981, el TPI decretó el divorcio de Acosta Navarro y Cruz Santos por haberlo acordado ambos de mutuo acuerdo. Como parte de la petición de divorcio, las partes presentaron un escrito jurado intitulado *Estipulación,* mediante el cual fue admitida la existencia tanto de bienes y deudas gananciales como la división parcial de éstos. El acuerdo consistió en que la Sra. Cruz Santos permanecería residiendo en el inmueble, propiedad de ambos según estipulado, junto a los cuatro hijos habidos en el matrimonio, todos ellos menores de edad al momento de efectuarse la disolución del vínculo marital y en la aceptación de lo recogido en la referida estipulación.

Como parte de la pensión alimentaria correspondiente, se acordó que el Sr. Acosta Navarro proveería la cantidad de $300 mensuales, los cuales incluirían el pago de una **primera hipoteca** que gravaba la propiedad en cuestión, ello por concepto de alimentos para beneficio de los cuatro menores que en ella residirían junto con la Sra. Cruz Santos. Al momento de dictar la sentencia apelada, el TPI estableció que dicho préstamo adeudaba la cantidad de $10,142.91, con un pago mensual de $193.00. De los documentos ante nos, no se desprende que las partes acordaran que el Sr. Acosta Navarro asumiría la obligación del saldo total de la mencionada hipoteca.

Con posterioridad al decreto de divorcio, las partes convivieron nuevamente en la misma propiedad en controversia. El 22 de febrero de 1983, las partes asumieron en comunidad de bienes la responsabilidad de una **segunda hipoteca** por la cantidad de $11,717.69 de principal e intereses, cuyo pago mensual era de $195.00. Al cabo de aproximadamente tres años, la Sra. Cruz Santos se fue voluntariamente de la propiedad de ambos, según declarado por ella bajo juramento mediante documento que sometiera ante el TPI el 16 de enero de 1987 en el caso de divorcio. Contemporáneo a ello, el Sr. Acosta Navarro solicitó en el mismo caso que se le permitiera arrendar la residencia en cuestión. De la prueba se desprende que ello respondía a que la parte apelada continuaba pagando la pensión alimentaria, la cual había sido aumentada a $325 mensuales y, a su vez, el monto de la primera y segunda hipoteca. El TPI accedió a su petitorio, por lo que, mediante contrato privado de 1ʳᵒ de agosto de 1986, el Sr. Acosta Navarro logró alquilar la propiedad en un canon mensual de $425.00, luego de, a sus expensas, someter la residencia a mejoras para poder fijar dicha cantidad de alquiler.

Finalizada su relación post-divorcio con otra persona, la Sra. Cruz Santos solicitó al TPI en el caso de divorcio retornar a la casa propiedad de las partes. Mediante resolución de 29 de agosto de 1986, el TPI puso a disposición de la Sra. Cruz Santos la residencia para ser habitada junto a sus cuatro hijos, una vez finalizara el aludido contrato de arrendamiento e instruyó a las partes a hacer los arreglos pertinentes para satisfacer los pagos hipotecarios adeudados. Vencido el contrato de arrendamiento, el Sr. Acosta Navarro se vio en la obligación de pagar las dos hipotecas desde febrero hasta mayo de 1987.

Dado los cambios suscitados con posterioridad a la *Estipulación* suscrita entre las partes por motivo de la disolución del matrimonio en el 1981 y a solicitud de la parte apelada, el TPI revisó los mismos. El 28 de mayo de 1987, las partes acordaron, durante la celebración de una vista al respecto, que el pago de la primera hipoteca le correspondería a la Sra. Cruz Santos, y el pago de la segunda hipoteca, además de la pensión de $325.00 al Sr. Acosta Navarro. ■ En ese acuerdo tampoco se menciona derecho alguno de reclamar créditos. Al cabo de dos meses de dicho acuerdo, el Sr. Acosta Navarro saldó el préstamo correspondiente a la segunda hipoteca y así se lo hizo constar a la Sra. Cruz Santos. El 25 de octubre de 1999, el TPI ordenó el archivo de lo relacionado con la petición de divorcio, dado que los cuatro hijos habidos en el matrimonio habían alcanzado la mayoría de edad.

Así las cosas, el 8 de febrero de 2002, Sr. Acosta Navarro presentó la acción de liquidación de bienes ante el TPI de cuya sentencia hoy se recurre. En síntesis, el apelado alegó la indivisión de la comunidad de bienes post ganancial creada acaecido el divorcio el 9 de enero de 1981 y reseñó haber afrontado el pago de deudas gananciales sin aportación alguna por parte de la Sra. Cruz Santos. Debido a ello, solicitó la división y liquidación de dichos bienes y que se le adjudicaran los créditos correspondientes por los pagos realizados por él que no era de su responsabilidad pactada hacerlos. Por su parte, la apelante respondió que las alegadas deudas ya habían sido satisfechas según lo estipulado por las partes.

Transcurridos varios incidentes procesales, el 14 de octubre de 2003, el TPI emitió la sentencia apelada. En lo pertinente, el TPI consignó las siguientes determinaciones de hechos como base para las conclusiones esbozadas. Dice el TPI que:

*"16. Desde noviembre del 1999 hasta el presente, la Sra. Cruz ha habitado la residencia y no ha realizado pago alguno a la hipoteca. El Sr. Acosta ha pagado la hipoteca hasta el presente, sin recibir aportación alguna de la demandada.*

*17. La residencia fue tasada por le Sr. Rafael Fernández Vázquez en el mes de noviembre de 2002. La tasación es de $50,000.00*

*18. El informe de tasación expone que la estructura está en completo deterioro en el interior y exterior. El deterioro puede ser observado en las paredes, techos, puertas, ventanas y conductos de agua y luz. El techo*

*está agrietado y requiere tratamiento. La depreciación física comprende el 35%, lo que sería $18,711.00.*

*19. La Sra. Cruz no evidenció con prueba documental alguna que hizo mejoras o reparaciones a la propiedad durante estos 15 años que ha residido la misma. El testimonio de las alegadas mejoras no mereció nuestra credibilidad.*

*20. Por estipulación de las partes, el 2 de diciembre de 2003, en una previa vista, se acordó el valor de los bienes muebles del hogar en $5,000.00. La Sra. Cruz siempre retuvo los bienes muebles para su uso y beneficio. Estipularon las partes que el Sr. Acosta tiene un crédito de $2,500.00. (Énfasis omitido)*

*21. La parte demandante invocó el derecho a valor rentable del inmueble. Se sometió certificación del Tasador Rafael Fernández Vázquez, con fecha del 21 de mayo de 2003.*

*22. La Sra. Cruz no desea retener la propiedad y así lo manifestó por conducto de su representante legal. El Sr. Acosta invocó entonces su derecho a retener la misma."* ■

Ante el parecer que antecede, y conforme a la apreciación de la prueba que tuvo ante sí, el TPI no concedió crédito alguno a las partes por los pagos hipotecarios realizados hasta octubre de 1999, ya que entendió que el "*hogar seguro*" terminó para ese entonces. No obstante, el TPI partió de la premisa que entre noviembre de 1999 y hasta la fecha del dictamen recurrido, los pagos hipotecarios que debieron realizarse por ambas partes sólo los realizó el Sr. Acosta en su totalidad, por lo que le adjudicó un crédito de $4,632.00 o la mitad de lo pagado durante el período antedicho de 48 meses. A su vez, el TPI entendió que desde ese mismo período la propiedad hubiese tenido valor rentable determinado, pero por el referido deterioro el valor rentable disminuyó, según estipulado por las partes. Por lo que, luego de deducir los pagos hipotecarios realizados por el Sr. Acosta, el TPI descifró el valor rentable dejado de percibir por los comuneros. Luego de afirmar que el "*valor rentable lo disfrutó totalmente la Sra. Cruz, sin hacer aportación*", al Sr. Acosta Navarro le correspondía también un crédito por concepto de valor rentable. ■

A raíz de la liquidación realizada, el TPI determinó que el Sr. Acosta Navarro tenía una participación de $30,553.55 y la Sra. Cruz Santos una de $9,303.55. En cuanto al deseo expresado por el Sr. Acosta Navarro, a saber la retención de la propiedad, el TPI resolvió que debía abonar a la Sra. Cruz Santos la cantidad antes mencionada, correspondiente a la participación de ésta en la comunidad, si es que deseaba quedarse con la misma. De la apelante querer permanecer en la propiedad, el dictamen la obligó a pagarle al apelado un canon de arrendamiento sobre la propiedad si las partes llegaban a ese acuerdo.

En desacuerdo con el curso decisorio tomado por el TPI, la apelante presentó ante este Tribunal un recurso de apelación formulando los siguientes señalamientos de error:

*"Erró el [TPI] al imputarle la suma de $5,071.45 a la demandada-apelante como responsabilidad por el pago en el balance de la hipoteca existente (primera hipoteca) aun cuando las partes habían acordado desde el 28 de mayo de 1987 que el demandante-apelado asumiría el pago de la misma.*

*Erró el [TPI] al imputarle la suma de $4,632.00 a la demandada-apelante como responsabilidad por el pago de la primera hipoteca durante el período de noviembre de 1999 hasta octubre de 2003, aun cuando las partes habían acordado desde el 28 de mayo de 1987 que el demandante-apelado asumiría el pago de la misma.*

*Erró el [TPI] al determinar que por algunos años y de forma irregular, la Sra. Cruz le enviaba en efectivo el dinero para este pago de la primera hipoteca.*

*Erró el [TPI] al determinar que en el acuerdo de las partes sobre el pago de las hipotecas no se provee derecho alguno a reclamar créditos.*

*Erró el [TPI] al no conceder crédito alguno a la demandada-apelante por los reembolsos en exceso que ella realizó al demandante apelado para el pago de la segunda hipoteca, la cual le correspondía pagar a ella."*

Con el beneficio de la reproducción de la prueba oral por medio de la transcripción presentada a esos efectos y la comparecencia de ambas partes, resolvemos.

**III**

Estando íntimamente relacionados los errores imputados, discutiremos los mismos en conjunto.

En Puerto Rico, el matrimonio da origen a la sociedad legal de gananciales, salvo pacto en contrario, y es considerado el régimen favorecido por nuestro ordenamiento jurídico. Está principalmente reglamentado por los Arts. 1295 al 1326 de nuestro Código Civil. 31 L.P.R.A. secs. 3621-3624. De modo supletorio, a dicho régimen le son de aplicación los preceptos del contrato de sociedad. Art. 1298 del Código Civil, 31 L.P.R.A. 3624. Se ha establecido que la sociedad tiene como causa la consecución de los fines particulares del matrimonio, mas no el lucro, como sucede en la mayor parte de las sociedades ordinarias. *Montalván Ruiz v. Rodríguez Navarro,* 161 D.P.R. __ (2004); **2004 J.T.S. 48**; opinión de 23 de marzo de 2004, citando a *Int'l Charter Mortgage Corp. v. Registrador,* 110 D.P.R. 682, 866 (1981); *García v. Montero Saldaña,* 107 D.P.R. 319, 322 (1978). Mientras esté vigente la existencia de la sociedad ganancial, sus componentes son codueños y coadministradores del caudal matrimonial sin especial designación de partes o cuotas. *Id.*

Por otro lado, una vez se disuelve el matrimonio por la muerte de uno de los cónyuges, por divorcio o cuando se declara nulo el matrimonio, se extingue, a su vez, la sociedad legal de gananciales y esto lleva consigo la separación de propiedad y bienes de todas clases entre los cónyuges. Art. 105 del Código Civil, 31 L. P.R.A sec. 381. Sus titulares (ex - cónyuges), pasan a ser copartícipes de una comunidad de bienes ordinaria, la cual, *"por más que se prolongue su estado de indivisión, es una masa en liquidación".* *González Cruz v. Quintana Cortés,* 145 D.P.R. 463 (1998); *Calvo Mangas v. Aragonés Jiménez,* 115 D.P.R. 219, 228 (1984).

Esta nueva comunidad de bienes entre los ex - cónyuges no se rige por las normas de la sociedad de gananciales, sino por las de comunidad de bienes - *Soto López v. Colón Meléndez,* 143 D.P.R. 282 (1994); *Calvo Mangas v. Aragonés Jiménez, supra; García v. Montero Saldaña, supra-,* que a su vez, en ausencia de contrato o disposiciones especiales, se gobierna por los Artículos 326 al 340 del Código Civil de Puerto Rico, 31 L.P.R.A. § 1271 – 1285. La liquidación que corresponde hacer, al momento de ser solicitada por uno o ambos comuneros, puede resumirse en tres (3) operaciones, a saber; (1) formación de inventario con avalúo y tasación; (2) determinación del haber social o balance líquido a partir; y (3) división y adjudicación de los gananciales. *Rosa Resto v. Rodríguez Solís* 111 D.P.R. 89, 91 (1981).

Conviene indicar que la separación de bienes y propiedad con el advenimiento de la comunidad aludida, entiéndase la liquidación de los bienes comunes entre los ex-cónyuges, en realidad no siempre es contemporánea a la disolución del vínculo matrimonial. *Montalván Ruiz v. Rodríguez Navarro, supra.* Véase además, *Calvo Mangas v. Aragonés Jiménez, supra; García López v. Méndez García,* 102 D.P.R. 383, 395 (1974). Dicha comunidad de bienes post-ganancial existe hasta que se liquida la sociedad legal de gananciales de manera final, por lo que puede extenderse indefinidamente, ya que la acción nunca prescribe -Art. 1865 del código Civil, 31 L.P.R.A. sec. 5295-, pero cualquiera de los comuneros puede pedir la división de la cosa común en cualquier momento. *Id.*

Así, si la correspondiente liquidación no se hace de inmediato, los activos y pasivos existentes pueden variar con el paso del tiempo; esto es, se pueden dar frutos, satisfacerse deudas, generarse ganancias, sufrirse

pérdidas o incurrirse en gastos en cuanto al caudal existente en la comunidad. *Montalván Ruiz v. Rodríguez Navarro, supra.* A esos efectos, expresa el Tribunal Supremo que:

*"[E]n la adjudicación final de la participación que le corresponde a cada ex-cónyuge, debe tomarse en consideración, de acuerdo a la evidencia sometida, si uno de los ex cónyuges puede interponer frente al otro un crédito por los cambios y operaciones ocurridas en el haber común. Igualmente, conforme se dispone en el Art. 328 del Código Civil, 31 L.P.R.A. sec 1273, hay que considerar cualquier efecto adverso que cualquiera de los ex cónyuges cause al haber común."*

*Id,* nota al calce número 3. (Énfasis en el original).

A tenor con el Art. 326 del Código Civil, 31 L.P.R.A. sec. 1271, se crea una comunidad de bienes, siempre y cuando la propiedad de un derecho o bien pertenezca en partes iguales a varias personas. Al momento de llevar a cabo la liquidación, el Art. 1322 del Código Civil, 31 L.P.R.A. sec. 3696, establece que el sobrante líquido de los bienes gananciales se dividirá por partes iguales entre los ex cónyuges o sus herederos.

Sin embargo, no podemos perder de perspectiva que la referida igualdad se debe presumir bajo el régimen de comunidad de bienes. La participación que cada comunero tenga en la administración de la cosa, incluyendo sus pasivos y activos en común, será en proporción a sus respectivas cuotas, las cuales siempre se deben presumir iguales, salvo prueba en contrario. Art. 327 del Código Civil, 31 L.P.R.A. sec. 1272.

En vista de lo anterior, podemos colegir que cuando la liquidación de los bienes gananciales se realice una vez disuelto el matrimonio, la proporción de cada ex cónyuge debe ser en partes iguales. Si se mantiene el estado de indivisión, una vez surja la susodicha comunidad de bienes, puede causar una variación en la proporción correspondiente. En estos casos, donde no se liquida la sociedad legal de gananciales de manera inmediata, al momento de determinar la participación que a cada ex cónyuge le pertenece, *"es preciso distinguir entre el valor de los bienes existentes al momento de la disolución de la sociedad legal de gananciales vis a vis el valor al momento de su liquidación". Montalván Ruiz v. Rodríguez Navarro, supra.* Por lo que el Tribunal debe evaluar si ha habido un aumento o disminución en el valor de los bienes **al momento de la liquidación y que se deban exclusivamente a la gestión realizada por uno de los cónyuges.** *Id.*

Sobre dicho particular, recién se ha resuelto que en caso de desigualdad en las gestiones que realice cada cónyuge por individual, la presunción antes discutida puede ser rebatida mediante prueba fehaciente de que el valor de los bienes en común es producto de la gestión de uno de los cónyuges. *Id.* Por lo tanto, la división correspondiente se hará de acuerdo a la aportación o gestión de cada comunero al bien común. Indudablemente, la razón lógica detrás de dicho análisis estriba en que, disuelta la sociedad de gananciales y creada la comunidad, cesa la presunción de ganancial consagrada en el Art. 1307 del Código Civil, 31 L.P.R.A. 3647. Con el propósito de hacer el delicado trabajo de adjudicar participaciones individuales al momento de hacer la liquidación post ganancial, se ha sugerido que dicha responsabilidad recaiga, primordialmente, en el TPI. *Montalván Ruiz v. Rodríguez Navarro, supra.* Dado el hecho de que el juzgador de instancia es el que aprecia la prueba y los testimonios orales ofrecidos por las partes en litigio, se debe reconocer la discreción utilizada por el juzgador de instancia en el referido proceso. *Id.*

Recapitulando, las participaciones correspondientes a los comuneros en la comunidad surgida al momento de disolver el matrimonio, se presumen iguales **antes** de: (1) realizar la formación de inventario con avalúo y tasación; (2) determinar el haber social o balance líquido a partir; y (3) dividir y adjudicar los gananciales. Tal y como mencionáramos, dicha presunción de igualdad en las partidas no es automática. Es decir, puede ser rebatible por cualquiera de los ex cónyuges en las ocasiones reseñadas, y en cuanto a todo gasto, esfuerzo, deuda o crédito hecho *"durante el período de vida transitorio de la comunidad posganancial". Montalván Ruiz v. Rodríguez Navarro, supra.* Una vez el juzgador evalúe toda la prueba que refleje el aumento o disminución

del haber en la comunidad producto de la gestión particular de los ex cónyuges, podrá estar dispuesto a determinar los cambios que puedan haber surgido en las participaciones correspondientes a las partes.

A la luz de lo expuesto anteriormente, corresponde que analicemos los hechos del caso de marras.

## IV

El 9 de enero de 1981, cuando se decretó el divorcio y la automática disolución de la sociedad legal de gananciales compuesta por el Sr. Acosta Navarro y la Sra. Cruz Santos, las partes acordaron por vía de Estipulación una división **parcial** de los bienes habidos entre las partes durante la vigencia del matrimonio. Según mencionáramos, la parcialidad estriba en que la Sra. Cruz Santos y los cuatro hijos menores del matrimonio continuaron habitando el inmueble perteneciente a ambos "*hasta que éstos decidieran en el futuro el destino del mismo*". ■ Sobre los bienes muebles no se efectuó la división al momento de presentar la Estipulación para el divorcio porque, en ese entonces, se **expresó** que se dividirían de forma equitativa. Además, no podemos perder de perspectiva que la intención de las partes, en aquel momento, fue esbozado meridianamente claro en el antedicho documento.

Del expediente se desprende que luego de una serie de hechos suscitados entre las partes, **formando ya parte de la comunidad de bienes posgananacial,** entre los que se encuentra la constitución de una segunda hipoteca suscrita por las partes la cual gravaba la propiedad de ambos, el Sr. Acosta Navarro incurrió en una serie de gastos destinados a mejorar las condiciones del bien inmueble en cuestión. El propósito de la **gestión individual** del Sr. Acosta Navarro fue para poder alquilar la residencia que, voluntariamente, ya la Sra. Cruz Santos y sus hijos no habitaban. El Sr. Acosta Navarro se vio obligado a alquilar a un tercero, fuera de la comunidad posganacial, el referido bien por espacio de seis meses para poder satisfacer la deuda existente por concepto de la primera y segunda hipoteca, ya que la Sra. Cruz Santos, hasta ese momento, en nada aportaba para dichos pagos.

Cuando ella regresa a la residencia aún indivisa, junto a sus cuatro hijos, el TPI instó a las partes a estipular lo relativo al pago de las hipotecas aludidas. Por lo que el 28 de mayo de 1987, las partes acordaron dichos pagos, qué préstamo le correspondía pagar a los comuneros por individual y hasta se aumentó a $325 la pensión alimentaria que le correspondía pagar al Sr. Acosta Navarro.

Concurrimos con la observación del TPI a los efectos de establecer que en ese acuerdo no se mencionó derecho alguno a reclamar créditos. Más aún, de la transcripción de la prueba estudiada se desprende que la Sra. Cruz Santos pagaba la primera hipoteca, conforme los acuerdos efectuados entre las partes con posterioridad a la disolución del matrimonio, por lo que no le asiste razón de reclamar crédito alguno. La Sra. Cruz Santos tenía el deber de pagar la susodicha hipoteca y así lo hizo, hasta julio 1999, cuando el último de los hijos del matrimonio advino en su mayoridad. Aunque el acuerdo del 1987 recoge que a la Sra. Cruz Santos le correspondía pagar la segunda hipoteca, lo cierto es que, mediante sus actos afirmativos y su testimonio, quedó demostrado que pagaba la primera, además de atestiguar que reconocía que la segunda hipoteca ya estaba salda por el propio Sr. Acosta Navarro.

Sin dudas, dado el análisis de la totalidad de la prueba presentada ante nos y conforme a la normativa vigente, las participaciones correspondientes a los ex cónyuges en el caso de autos no podían ser equitativas. Debe tenerse en mente que las deudas y el valor de los bienes en común tienen un valor inicial y que, aparte de cualquier gestión efectuada, para bien o para mal, en pos de la administración de los activos y pasivos es común. En este caso, las fluctuaciones en las participaciones responden en proporción a las cuotas de las partes, a sus gestiones y aportaciones individuales hechas durante los **veintidós años** de vigencia de la comunidad de bienes habida entre ellos. En todo caso, a quien le correspondía en derecho reclamar un crédito al momento de liquidarse la comunidad era al Sr. Acosta Navarro por sus gestiones de reparación del bien inmueble en un momento dado y por los pagos hipotecarios que satisfizo antes de octubre de 1999. Sin embargo, no los reclamó

teniendo derecho a ello.

No obstante lo anterior, en el sano ejercicio de su discreción, luego de la operación correspondiente de liquidación del caudal según discutida, el TPI le concedió un crédito al Sr. Acosta Navarro por los pagos hipotecarios realizados por éste desde noviembre de 1999 hasta octubre de 2003, fecha en que fue emitida la sentencia apelada. A su vez, el TPI le concedió correctamente al apelado el valor rentable dejado de percibir como comunero y el valor de los bienes muebles que, desde disuelto el matrimonio, habían quedado sin liquidar y estuvieron todo ese tiempo bajo el uso y disfrute de la apelante para un total de $30,553.55.

Por su parte, el TPI determinó que la participación correspondiente a la Sra. Cruz Santos al momento de liquidar la comunidad de bienes era de $9,303.55. Esto responde a que el TPI, a la luz del ordenamiento jurídico discutido, le adjudicó del valor neto de la propiedad en controversia el deterioro sufrido y reflejado en la tasación y le dedujo de su participación: (1) la deuda hipotecaria a mayo de 2003; (2) la amortización de deuda hipotecaria desde noviembre de 1999 a octubre de 2003; (3) el valor rentable dejado de percibir por los comuneros; y (4) el valor de los bienes muebles al momento de la liquidación.

Finalmente, concordamos con el TPI en cuanto a que para resolver la controversia trabada, el tribunal apelado se vio en la obligación de evaluar cuestiones de credibilidad que, a nuestro juicio, realizó en ausencia de pasión, prejuicio, parcialidad y error manifiesto.

Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. *Argüello v. Argüello*, opinión de 31 de agosto de 2001, 154 DPR ____ (2001), **2001 J.T.S. 127**; *Trinidad v. Chade,* opinión de 18 de enero de 2001, 153 D.P.R. ____ (2001), **2001 J.T.S. 10**.

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Argüello v. Argüello, supra*. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo, por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Id.*; *Pueblo v. Bonilla Romero*, 120 D.P.R. 92 (1987).

Ante ello, reiteramos que la norma fundamental de nuestro ordenamiento jurídico de que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. *Trinidad v. Chade, supra.*

## V

Resolvemos, por tanto, que el TPI efectuó la operación de liquidación de la comunidad de bienes existente entre las partes conforme a derecho. Habida cuenta de que la parte apelada logró con éxito, mediante la prueba presentada, rebatir la presunción de que la liquidación debe hacerse por partes iguales y logró probar que los créditos adjudicados a las partes fueron producto de la gestión, aportación y trabajo individual de los comuneros durante el estado de indivisión de la comunidad posganancial. Ineludible nos resulta concluir que la parte apelada fue merecedora de la adjudicación de credibilidad que hiciera el TPI mediante la sentencia apelada.

Por lo antes expuesto, confirmamos la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 2004 DTA 112

**1.** Véase Alegato de Apelación, *"Minuta"*, Apéndice #10, pág. 33. Cabe aclarar que dicho documento se desprende que al apelado le correspondía satisfacer el monto adeudado de la primera hipoteca y a la apelante lo relativo a la segunda. Sin embargo, el TPI sentenció, a base de la totalidad de la prueba, que el Sr. Acosta Navarro pagó la primera hipoteca además de la pensión alimentaria, *"y que por algunos años y de forma irregular"*, la Sra. Cruz Santos enviaba al apelado el pago para la primera hipoteca, conciente de que iba dirigido a pagar la misma, dado su testimonio expreso en corte donde reconoció el vencimiento de la segunda hipoteca por los pagos efectuados por el apelado.

**2.** Véase Alegato de Apelación, *"Sentencia"*, Apéndice #2, págs. 4-5.

**3.** *Id,* *"Sentencia"*, Apéndice #2, pág. 6.

**4.** Véase Alegato de Apelación, *"Sentencia"*, Apéndice #2, pág. 2.